LOMBARD, INTERVENOR, v. DOWS & CO.

LOMBARD v. GRANT & JOHNSTON ET AL.

1. **Fraudulent Conveyance:** MORTGAGE IN CONTEMPLATION OF INSOLVENCY FOR MORE THAN DEBT: BURDEN TO SHOW GOOD FAITH: EVIDENCE CONSIDERED. When a mortgage is executed in contemplation of insolvency for an amount in excess of the actual indebtedness, it constitutes a badge of fraud; and casts on the mortgagee the burden of showing that the mortgage was executed in good faith for honest purposes, and of satisfactorily explaining why an amount greater than the actual indebtedness was secured thereby. (See cases cited in opinion.) And, as such showing and explanation are not satisfactorily made by the evidence in this case, (see opinion,) *held* that an attachment subsequent to the mortgage constituted the superior lien upon the property.

*Appeal from Union Circuit Court.*

WEDNESDAY, JUNE 3. .

ON the twenty-fourth day of June, 1882, David Dows & Co. caused an attachment to be issued against Grant & Johnston, and thereon a large amount of personal and real property was attached as the property of Grant & Johnston. On the fourteenth day of September, 1882, James L. Lombard asked and obtained leave to intervene in said action on the ground that Grant & Johnston had, on the twenty-third day of June, 1882, executed to him a mortgage on the personal property so attached; and he asked that his lien be declared to be the superior lien on such property. To the petition of intervention Dows & Co. pleaded that the mortgage was fraudulent and void, on the ground that it was made to hinder and delay creditors. The court granted the relief asked by the intervenor, and Dows & Co. appeal. In August, 1882, James L. Lombard commenced an action to foreclose a mortgage on real estate executed by Grant & Johnston. Dows & Co. were made defendants, and pleaded that the mortgage was fraudulent and void, on the ground that it had been made to

hinder and delay creditors. As to Grant & Johnston this mortgage was declared a valid lien on the real estate, and the same duly forclosed; but as to Dows & Co. it was declared to be "void and of no force and effect." From this decree Lombard appeals.

*T. M. Stuart*, for Dows & Co.

*McDill & Sullivan*, for Lombard.

SEEVERS, J.—The conceded facts are that on the twenty-third day of June, 1882, Johnston, of the firm of Grant & Johnston, informed Lombard that he expected that Dows & Co. would cause an attachment to issue against Grant & Johnston, and that he desired to secure Lombard in the amount due him, whereupon a chattel mortgage was executed to secure the sum of $17,700, the same being evidenced by certain promissory notes. At the same time, and as a part of the same transaction, Johnston, or Grant & Johnston, executed a mortgage on real estate to secure the sum of $6,000 due Lombard over and above the amount secured by the chattel mortgage. The amount secured by both mortgages was $23,700. Grant & Johnston, at that time, were only indebted to Lombard in the sum of $11,700.

I. Counsel for the appellants, Dows & Co., insist that, when a mortgage is executed in contemplation of insolvency for an amount in excess of the actual indebtedness, it constitutes a badge of fraud, and casts on the mortgagee the burden of showing that the mortgage was executed in good faith for honest purposes, and of satisfactorily explaining why an amount greater than the actual indebtedness was secured by the mortgage; and such is the law. *Davenport v. Cummings*, 15 Iowa, 219; *Butts v. Peacock*, 23 Wis., 359; *Tripp v. Vincent*, 18 Paige, Ch., 176; *Beeler's Heirs v. Bullitt's Heirs*, 3 A. K. Marsh, 280; *Lynde v. McGregor*, 95 Mass., 172; *Wood v. Scott*, 55 Iowa, 114. We do not

1. FRAUDULENT conveyance: mortgage in contemplation of insolvency for more than debt: burden of proof.

understand counsel for Lombard to dispute this proposition. Their contention possibly is that the burden is not necessarily shifted, but we think this must be so. 'In *Wood v. Scott* it is said:   "The fact that a mortgage is taken for more than is due from a person known to be insolvent would, of course, be a strong circumstance tending to impeach the mortgage, and, if it was known to the mortgagee that he was taking a mort-gage for more than was due, and no reasonable explanation was given for so doing, it would be difficult, if not impossible, to resist the conclusion that it was taken with a fraudulent intent."   This clearly implies that the required explanation must be given by the mortgagee, and, of course, the burden is on him to do so.   That Grant & Johnston were insolvent at the time the mortgages were given, and that Lombard so knew, we find from the evidence.   Indeed, Lombard, in substance, so testifies.

II.   The evidence satisfactorily shows that of the $11,700 actually due Lombard, $5,000 of that amount was amply secured by mortgages on real estate; therefore THE SAME: evidence con-the amount of the unsecured indebtedness only sidered. amounted to $6,700.   The only explanation given for again securing the $5,000 by the execution of the chattel mortgage, in substance, is that Grant & Johnston offered to do so, and Lombard, out of abundant caution, on the principle that a person cannot have too much security, and should always take all he can get, thought he was justified in taking it.   This explanation, under the circumstances, is far from satisfactory; especially is this so when the fact is considered that there was included in and secured by the mortgage $6,000, which there is no pretense was due.   The only explanation given why this was done is, that one of the notes for $3,000 secured by the mortgage was secured by a mortgage on real estate executed by Grant & Johnston to one Evans.   The real estate mortgage included two other notes for $6,000, which became due prior to the $3,000 note owned by Lombard, and which he had purchased, as we understand,

about sixty days prior to the execution of the chattel mortgage.

Now, it is said that, inasmuch as the notes which first became due constituted the prior lien on the real estate, and as Lombard did not know that they had been paid, he was justified in taking additional security for his protection. There are several reasons why this explanation is not satisfactory. In the first place, Lombard does not testify that he did not know that the notes had been paid; but Johnston so informed him; and, further, Johnston testifies in what manner the notes had been paid, and Lombard's connection with and knowledge of such payment; which leads us to believe that Lombard had knowledge, independent of what Johnston informed him, that the notes had been paid. Lombard is part owner of and manager of the bank of Creston, and Johnston testifies that his recollection is that he procured a draft of the bank to pay one of the notes, which was owned by a party in New York, and that Lombard forwarded the draft to pay the note. This is not denied by Lombard. It is true, he testifies that he had no knowledge that the notes had been paid, except the information obtained from Johnston. The latter also testifies that he procured a draft at the bank to pay the other note, but he is not clear that such draft was forwarded by Lombard to the owner of the note. Lombard knew that the real estate mortgage secured three notes of $3,000 each, due in March, 1879, 1880 and 1881; and when he purchased the last note due he made no inquiry as to whether the two prior notes had been paid or not. As he knew the two notes first falling due constituted the prior lien, he must have known that they had been paid, or he knew he was acquiring a junior lien; and from his evidence and his manner of doing business, as testified to by himself, we feel warranted in saying that he would not do the latter without due inquiry.

We feel constrained to believe that Lombard and Grant & Johnston knew that the two $3000 notes had been paid, and that they were included in the chattel mortgage for the

express purpose of covering the property with an apparent indebtedness, for the purpose of hindering, delaying and defrauding Dows & Co. Lombard's explanation is not only unsatisfactory, but the evident purpose of the parties was to fraudulently cover the property, so that the creditors of Grant & Johnston would be deterred from making the attempt to have the same applied to the satisfaction of the amounts due them.

III. The note for $6,000, secured by the real estate mortgage, was in fact executed on the twenty-third day of June, 1882, but it was dated on the first day of that month. No indebtedness existed for which this note was given, and the only excuse given for antedating it is that the bank with which Lombard was connected frequently antedated mortgages. This was "done to keep it straight easier;" but Lombard in his evidence states that he does not know why the note in question was antedated. This explanation is far from being satisfactory, and the fact that the note was antedated is, to say the least, suspicious. Lombard claims that the note and mortgage were given as collateral security for advances made and to be made. So far as advances had been made, they were abundantly secured by mortgages on real estate and by the chattel mortgage, if it was made in good faith and for honest purposes, as Lombard then and now claims it was. There was no real or apparent necessity for taking more security for the then existing indebtedness. Then, why was such additional security taken? Lombard testifies that it was taken because he had "been taught that one could not get too much security." As between the parties,— that is, those who consent to give and take the security,—there is no valid objection to their doing in this respect as they please. But when the party giving it is known to be insolvent, or when it is given in contemplation of insolvency, and the creditor has knowledge of this fact, he cannot be permitted to pile security on security unnecessarily, to the detriment of other creditors. Such a transaction would amount to a cover-

ing up of the debtor's property, and its tendency would be to deter creditors from, and delay them in, attempting to have the property applied to the payment of their debts, and such a transaction necessarily must be regarded as suspicious, and, if not satisfactorily explained, as fraudulent. Lombard testifies that he never intended to let Grant & Johntson have $6,000 when the note for that amount was taken; that it was not his "business to loan money to men in failing circumstances like they [meaning Grant & Johnston] were at that time."

The amount of the future advances was not agreed, upon, and we have looked in vain for any evidence tending to show that Lombard obligated himself to make any advance whatever. It was entirely optional with himself whether he did so or not. He was not under even a moral obligation to do so. There was not, therefore, so far as such advances are concerned, any consideration for the note. We have no doubt that the note and mortgage was given to cover up the property of Grant & Johnston, for the express purpose of delaying and defrauding David Dows & Co.; and, as to them, the transaction must be regarded as fraudulent. When the note and mortgage were executed, Lombard had knowledge that David Dows & Co. were about to cause the property of Grant & Johnston to be attached. Such attachment was issued, and the property duly attached on the twenty-fourth day of June, 1882. On the twenty-eighth day of June, 1882, and afterwards, Lombard claims that he made advances on the faith of the note and mortgage to the amount of $1,218. These advances were made subsequent to the levy of the attachment, of which Lombard must have had knowledge.

Under the circumstances above stated, the attachment lien must be regarded as superior to that of Lombard, unless possibly he would be entitled to priority as to the taxes paid, as to which no determination is made, because not argued by counsel. The result is that on Lombard's appeal the decree

of the circuit court is affirmed, and on the appeal of Dows & Co. it is reversed.