Hon. FRANK DALE, Chief Justice.
Hon. HENRY W. SCOTT,  
Hon. A. G. CURTIN BIERER,  } Associate Justices.
Hon. JNO. L. M'ATEE,  
Hon. JOHN C. TARSNEY,  

---

E. E. JAFFRAY & COMPANY v. W. H. WOLF AND LOUIS F. WOLF, *partners as William F. Wolf & Son.*

1. ATTACHMENT—*Chattel Mortgage—Seizure of Property.* A chattel mortgage was given on December 15, 1896, by W. & Son, upon a stock of goods, wares and merchandise, to V., of which V. took immediate possession. The plaintiffs forthwith sued W. & Son, on December 17, 1890, for an amount claimed to be due them, and seized the goods under a writ of attachment, alleging that (1) the defendants had sold and conveyed and otherwise disposed of their property, with the intent to cheat or defraud their creditors, or to hinder or delay them in the collection of their debts; and (2) that the defendants fraudulently contracted the debt and incurred the obligation for which the suit was brought. Plaintiff alleged that the claim was, according to the provisions of the contract, due on the 1st day of May, 1891. Upon the hearing of the case in April, 1891, the plaintiffs applied to the trial court for leave to amend their complaint and attachment affidavit by a showing that the goods sold by plaintiffs to defendants had been disposed of by them, and that as a consequence, no suit for recovery of the specific goods sold could be effective. The application to amend the complaint was allowed; the application to amend the attachment affidavit was refused. Upon the hearing of the cause, the plaintiffs' evidence having been introduced, the defendants demurred. The cause was tried under the Indiana Code of Civil Procedure which went into force in this Territory, December, 1890; the rules of that Code and their interpretation and construction by the supreme court of the

state of Indiana, governing the trial and rendition of judgment provide, that the jury, if a jury has been empanneled, would be discharged by the court, and such evidence as had been offered tending to make out the case in behalf of the plaintiff would be considered. All the evidence tending to make out the case in behalf of the defendant would be excluded, and the sole question would be, is there any evidence legally tending or conducing to support the allegations of plaintiffs' petition? In this case the court sustained the demurrer to the petition. Being thus required to examine the evidence and to pass upon the fact as to whether there was any evidence of fraud legally tending to support the allegations of plaintiffs' petition and affidavit in attachment, and finding that such evidence existed, it is our conclusion that the judgment should be reversed and that the finding and judgment should have been for the plaintiffs, for the amount claimed in their petition, and that the attachment should be sustained.

2. DEMURRER—*Effect—Indiana Practice.* For the argument upon the demurrer to the evidence, the rule which must guide the court under the Indiana Code of Civil Procedure is, that all of the adversary's evidence must be admitted as true, and that all of the defendants' testimony, so far as any has been adduced up to that point, shall be considered as withdrawn or false, and if any legal evidence whatever has been adduced tending to make out the plaintiffs' case, the ruling will be in favor of the plaintiff, the demurrer being · overruled and judgment will be rendered accordingly.

3. CHATTEL MORTGAGE—*Fraud.* The chattel mortgage having been executed to V,, for himself and other mortgagees, under an authority to him to obtain for them such security as he could, and evidence having been produced to show fraud in the taking of the said chattel mortgage, which fraud was known to V., knowledge of the fraud will also be chargeable to the other chattel mortgagees, and the mortgage will be regarded as altogether fraudulent.

4. IF FRAUDULENT—*Will be Set Aside.* If a chattel mortgage is affected with fraud in part in the intention to fraudulently hinder, or delay creditors, it will be regarded as fraudulent altogether, and will be set aside in behalf of the suing creditors,

5. UNNECESSARY SECURITY—*Evidence of Fraud.* If the mortgagee in a chattel mortgage be otherwise abundantly secured. the taking of additional security by the chattel mortgage, will, itself, be considered as evidence of fraud. for creditors will not be permitted to pile security on security unnecessarily to the detriment of other creditors.

6. CREDIT—*Extension—Fraud—Damages.* If credit be extended and a debt incurred by means of fraudulent representations, the creditor is entitled to sue at once for payment for the amount due under the contract, whenever the fraud is discovered; notwithstanding the fact that the debt by its terms may not then be due, and the plaintiffs are not limited to an action for damages, if they see fit to sue prior to the maturity of the debt under the contract.

7. CONTRACT—*Interpretation—Law Applied.* If goods be shipped to this Territory purchased in New York, the laws of the state of New York will apply in the interpretation of the contract, and to all facts determining the maturity of the amount due.

8. ATTACHMENT AFFIDAVIT—*Amendment.* An amendment asked for by the plaintiffs to the attachment affidavit, showing that the defendants had entirely disposed of property purchased of plaintiffs, and which had been purchased upon fraudulent representations, and that it was out of the power of the plaintiffs, therefore, to recover by replevin, was proper and should have been allowed.

*Error from the District Court of Logan County.*

*Wisby & Hornor* and *Keaton & Cotteral,* for plaintiffs. in error,

*Harper S. Cunningham,* for defendants in error.

The opinion by the court was delivered by

McATEE, J.: This suit was begun by the filing of the complaint in the district court of Logan county on December 17, 1890, in which the plaintiffs in error here alleged that the defendants were indebted to them in the sum of five thousand two hundred and fifty dollars, for goods, wares and merchandise sold and delivered to the defendants, which sum would be due on the 1st day of May, 1891, and that the defendants refused to pay for the same.

At the time of the filing of the suit, the plaintiffs also filed their affidavit for attachment, alleging that the defendants had sold, conveyed and otherwise disposed of their property with the intent to cheat or defraud their creditors, or to hinder or delay them in the collection of their debts, and that the defendants fraudulently contracted the debt and incurred the obligation for which the suit was brought. The plaintiff also alleged that the claim became due on the 1st day of May, 1891.

The defendants, prior to 1890, had been engaged in the mercantile business in the city of Topeka, Kansas, but removed part of their stock of goods to Oklahoma City, and the remainder thereof to the city of Guthrie, about the 1st of June, 1890, opening up in each of those

20——IV.

cities, a dry goods, clothing and general merchandise store.

They were, at the time of the removal of the stock, indebted to Tootle, Hosea & Company, Henry W. King & Company, the Central National bank of Topeka, the Bank of Topeka, A. H. Vance, and to A. H. Vance, D. A. Harvey and T. J. Clark, as sureties, in the sum of twenty-two thousand dollars.

The defendants, prior to the contraction of the debt herein sued for, had been possessed of real estate in the city of Topeka, but on the 5th day of July, 1887, Louis H. Wolf deeded lot No. 15 in Potwin's subdivision of the city of Topeka, and owned no real estate there after that.

In May, 1890, W. F. Wolf and Louis H. Wolf transferred lots 21, 22 and 23, in block 34, in Oklahoma City, for a consideration stated at four thousand seven hundred dollars, to the wife of W. F. Wolf and the mother of Louis H. Wolf, Georgia H. Wolf, by transferring the townsite title, for which she subsequently procured the townsite deed. This conveyance was made for eleven thousand dollars borrowed some years previously.

On July 26, 1890, W. F. Wolf and Georgia Wolf, his wife, granted lot No. 20, Greenwood avenue, Potwin Place, Topeka, by warranty deed, to Laura V. Vance, their daughter and the wife of A. H. Vance, the expressed consideration being sixty-five hundred dollars. On this property there was a mortgage of four thousand dollars. Neither of the defendants owned any real estate thereafter.

On July 29, 1890, the defendants, desiring to purchase goods upon credit from the plaintiffs, gave to them the following statement of their financial condition:

Stock in Oklahoma City..........$17,000 00
Guthrie stock...................  35,000 00
Real estate in Oklahoma City.....  12,000 00
Topeka real estate...............  20,000 00

Making total firm assets of def'ts...$84,000 00
Liabilities.....................$27,000 00

Leaving total worth of the firm of, $57,000 00

The statement was false and fraudulent, but the plaintiffs, relying upon the representations contained in it, sold the goods, to recover the value of which this suit was brought.

At various times from June 7, 1890, to August 22, 1890, the same statement was made to various other large wholesale mercantile firms, from all of whom goods were thereupon purchased, to the total amount of about sixteen thousand dollars.

On December 13, 1890, A. H. Vance, representing Tootle, Hosea & Company, Henry W. King & Company, The Central National bank of Topeka, the Bank of Topeka, himself on his own account, and also D. A. Harvey, T. J. Clark and himself, as sureties on indebtedness to the foregoing creditors, came from Topeka, Kansas, to Oklahoma, and received from the defendants a chattel mortgage covering the stock of goods in Guthrie and Oklahoma City, and in fact, all the preoperty which defendants then owned.

The mortgage provided that:

"If said debt and interest be paid as above specified, this sale and transfer shall be void, otherwise to be in full force and effect. The possession of the said above described property is hereby surrendered to the said parties of the second part, and the said parties of the second part shall sell the same at public or private sale, with or without notice, and after satisfying the aforesaid

debt and interest thereon and all necessary and reasonable costs and expenses incurred, out of the proceeds of the sale, they shall return the surplus to the parties of the first part, or to their legal representatives."

The mortgage was delivered on the morning of the 15th of December, 1890, at Guthrie, and recorded in the county clerk's office, and possession forthwith given to Vance, through whom it was turned over to W. L. Harvey, brother-in-law of D. A. Harvey, who is the brother-in-law of Vance. Vance, on the morning of the 15th of December, 1890, went to Oklahoma City and immediately took possession of the stock there, the middle of the forenoon, and that was also turned over to W. L. Harvey.

Vance knew at the time that this was all the property the defendants had, and that they were legally in debt to other creditors not secured by the chattel mortgage; that a judgment had been obtained against the defendants recently on a claim which they were unable to pay, and that he feared an execution on their property. Their checks had frequently gone to protest during the latter part of November and the early part of December, and a large amount of their indebtedness to the attaching creditors was due which they were unable to pay.

On December 15, 1890, the indebtedness of the firm outside of the amount secured by the chattel mortgage was nineteen thousand dollars.

An indebtedness claimed in the mortgage to be due to A. H. Vance was the same sum. of money for which, on July 26, 1890, W. F. Wolf and his wife had by warranty deed granted lot No. 20, Greenwood avenue, Potwin Place, Topeka, Kansas, to Laura V. Vance, their daughter, who was the wife of A. H. Vance, subject to a mort-

gage of four thousand dollars, the consideration expressed in the deed being sixty-five hundred dollars.

Thereafter, upon April 2, 1891, the defendants filed their answer and confession of judgment to plaintiff's complaint, consenting that judgment go against them for the sum of five thousand, two hundred and fifty dollars. The court thereupon passed an order sustaining the attachment in the case, and ordering payment to the plaintiffs, of the proceeds of the sale of the attached property.

Thereafter, on April 7, 1891, the defendants filed their motion to set aside the judgment rendered April 2, 1891, for the reasons: (1). That an issue as to the validity of the attachment proceedings had been formed and no trial had thereon; and (2) because the judgment was rendered by mistake; and (3) because the judgment was rendered on default and without a hearing. And on May 2, 1891, the court rendered judgment setting aside the judgment rendered on April 2, 1891.

Evidence having been produced at the hearing of the cause, and upon motion to dissolve the attachment, the defendant demurred to all the evidence introduced by plaintiffs on the ground that all the evidence does not show that the defendants, W. F. Wolf & Son, have sold, conveyed or disposed of their property with fraudulent intent to cheat or defraud their creditors, or to hinder or delay them in the collection of their debts. The demurrer was sustained, the plaintiffs excepting.

On January 20, 1892, the plaintiffs asked leave of the court by application, duly sworn to, to file the amended complaint and attachment affidavit, in order that they might conform to the facts proved in the cause and in the furtherance of justice. The court refused to allow the amended attachment affidavit to be filed.

The plaintiffs filed their amended complaint. And, thereafter, on January 21, 1892, judgment was finally rendered, sustaining the defendants' demurrer to plaintiffs' evidence, dissolving the attachment, dismissing the case, and denying the plaintiffs' application to amend their complaint and attachment affidavit. To all of which the plaintiffs saved exceptions.

Error is assigned: (1.) In sustaining the defendants' motion to set aside the judgment of the court rendered April 2, 1891; and (2) in sustaining the defendants' demurrer to the evidence introduced in said case; and (3) in overruling the plaintiffs, application to amend the complaint and attachment affidavit.

Upon the second proposition it is to be said that in § 11 of the Organic Act, May 2, 1890, Oklahoma Statutes, 1893, p. 44, it was provided, that:

"The chapters upon the Code of Civil Procedure contained in the compiled laws in the state of Nebraska in force November 1, 1889, in so far as they are legally applicable, and, not in conflict with the laws of the United States or with this act, are hereby extended and put in force in the Territory until the adjournment of the first session of the legislative assembly of said Territory."

This suit was brought December 17, 1890, and was governed until December 25, 1890, when the first legislature of the Territory adjourned, by the Nebraska Code of Civil Procedure.

After that date, "in all actions already commenced, the pleadings to be had, the manner of procuring testimony, the examination of parties, the trial and rendition of judgment, and all other proceedings, shall conform to the provisions of this act, so far as applicable."

Thereafter the provisions of the Code of Civil Procedure as contained in the Statutes of 1890, which is the

Code of Practice and Proceeding as then adopted from that of the state of Indiana, were applicable to the further proceedings in the case in respect to the demurrer to the evidence, the effect of the demurrer, the discharge of the jury, and the rule for the determination of the case, and the rendition of judgment when the demurrer was filed and argued. And the court here will follow the principles of interpretation and construction placed upon that Code by the supreme court of the state of Indiana.

That rule is, that when the defendant demurs to the evidence introduced by the plaintiff, all the evidence which might have been introduced tending to make out the case in behalf of the defendant will be excluded from consideration by the court.

Upon the filing of the demurrer by the defendant to the evidence offered by the plaintiff, the jury, if a jury has been empanneled, will be discharged by the court, which takes entire control of the case for consideration, and the court will proceed to consider such evidence only as has been offered, tending to make out the case in behalf of the plaintiff. If any evidence has been adduced tending to support the contention of the defendant demurring, it will be excluded from consideration and the sole inquiry will be, is there any evidence tending or conducing to make out the allegations of plaintiff's petition. The question will not be whether there is sufficient evidence to make out the contention of plaintiff, for that would be to invade the province of the jury and to commit to the court the power to pass upon the weight and sufficiency of the evidence. But the sole question will be, is there any evidence legally tending or conducing to support the allegations of the plaintiff's petition.

This will be so even if the plaintiff's own witnesses

should testify to some facts tending to make out the plaintiff's case and to some facts which tend to support the defense set up in the pleading of the defendant. For the argument upon the demurrer, the rule which must guide the court is, that all of the adversary's evidence must be admitted as true, and that all of the defendant's testimony, so far as any has been adduced up to that point, shall be considered either as withdrawn or as false and untrue, and if any legal evidence whatever has been adduced tending to make out the plaintiff's case, the ruling will be in favor of the plaintiff, the demurrer being overruled and judgment will be rendered accordingly.

The Indiana cases are uniform upon the subject from the earliest constitution of the supreme court of that state up to the present time, and there is no diversity as to the rule except such as may arise from that variety in the expression of the law which necessarily occurs in the declaration of the same doctrine by different individuals and at different times.

It is said in the various cases that, "if the evidence conflicts the party demurring must admit that his adversary's evidence is true, so far as it conflicts with his own;" and that the demurrer admits, "all of the facts which the evidence tends in any degree to prove," and will not consider that which favors the demurrant, and "the appellant by demurring, withdraws from the consideration of the court whatever was favorable to himself and consents that whatever reasonable inference could be, should be drawn from the evidence demurred to;" and, "if there is anything in the evidence from which the jury might draw the presumption against the party demurring, the demurrer should be overruled;" and, "the demurrer admits all the facts proven, admits

the existence of the facts of which there is evidence tend-
ing to prove, and all the reasonable inferences which may
be drawn from the facts in evidence;" and, "the ques-
tion, therefore, is this, does the evidence, considering
only that which is favorable to the appellant and yielding
to him the full benefit of all the reasonable inferences
which it supplies and furnishes, entitle him to recovery?"
(*Railroad Company v. McLin*, 82 Ind. 444; *Ruff v. Ruff*,
85 Ind. 431; 120 Mass. 336; Wharton's Evidence, § 840;
I8 Ind. 577; *Vigo v. Brumfield*, 102 Ind. 146; *Adams v.
Slate*, 87 Ind. 573; *Palmer v. Railroad Company*, 112
Ind. 250.

The question then to determine in this case is, whether,
upon an examination of all the evidence theretofore in-
troduced, any evidence was adduced tending to show in
behalf of the plaintiff or from which the jury might form
a reasonable inference that the defendants, in executing
the chattel mortgage, had sold and conveyed or otherwise
disposed of their property with fraudulent intent to cheat,
or defraud, or hinder, or delay their creditors in the col-
lection of their debts.

The testimony shows, that a short time prior to July
26, 1890, the defendant firm borrowed the sum of nine-
teen hundred dollars from Laura V. Vance, the daughter
of W. F. Wolf and Georgia Wolf, and that thereafter, on
July 26, 1890, W. F. Wolf and Georgia Wolf, his wife,
deeded lot No. 20, Greenwood avenue, in Potwin Place,
Topeka, Kan., to Laura V. Vance, for the expressed con-
sideration of six thousand, five hundred dollars, by war-
ranty deed, there being at the time a mortgage upon the
property of four thousand dollars. The consideration
for this conveyance was stated to be the sum of nineteen
hundred dollars borrowed from Laura V. Vance. The
conveyance shows that the warranty deed represented an

absolute sale, and that the debt of nineteen hundred dollars was, therefore, extinguished.

There is evidence to show that the property, instead of being worth six thousand, five hundred dollars, was worth ten or twelve thousand dollars. It was testified by A. H. Vance, the chattel mortgagee and husband of Laura V. Vance, that at the time the deed was made to her the property was worth eight or nine thousand dollars. The deed was filed for record on the 15th day of December, 1890. This loan of nineteen hundred dollars thus paid on the 26th day of July, 1890, by the convey-. ance of an equity of redemption, testified to in the evidence as worth from eight to nine thousand dollars, was again set up as a consideration in the chattel mortgage of December 15, 1890, then grown to the sum of twenty-three hundred dollars, for which the defendant firm then undertook to mortgage their stock of goods, wares and merchandise, to A. H. Vance, the husband of Laura V. Vance, and undertook to use that consideration as a cover for a certain proportion of the said stock which had been already paid off and discharged six months before. This was a patent and flagrant fraud. It hindered and delayed creditors in the collection of their debts, was calculated to cheat and defraud them, and will be considered as a disposal of property with fraudulent intent.

There is testimony in the case to show that A. H. Vance was the agent of the mortgagees, and that he was authorized by them to take any security that he possibly could get for their benefit without being specifically directed to take this chattel mortgage. Inasmuch as the debt of nineteen hundred dollars due to Laura V. Vance,. his wife, had been paid off and discharged by the conveyance of the equity of redemption, valued in the evi·

dence at from eight to nine thousand dollars on July 26, 1890, we hold that there was evidence tending to show that he was aware of the fraud sought to be perpetrated upon the creditors of the defendants by the taking of the chattel mortgage in question, by which the claim of nineteen hundred dollars, then claimed to amount to an indebtedness of twenty-three hundred dollars, was sought to be inserted as a shield and protection between the defendants and their creditors, going to hinder and delay the latter from the collection of the debt due to them, and that all of the mortgagees in the chattel mortgage whom he thus represented as agent were and are chargeable with knowledge of the fraud then sought to be perpetrated in the execution of the chattel mortgage under and by which they then, and now, seek protection.

There is a diversity of judgment of the supreme courts of the various states as to whether such an over-statement of a debt simply indicates fraud, or whether such an over-statement of its very self voids the instrument. But there is no diversity of opinion, nor room for any, as to whether such an over-statement as existed, and was made in this case, was a fraud or not. The fact that the mortgage was then given and existed in contemplation of insolvency simply emphasizes the fraudulent degree of the transaction and does not change its character. (*Carson v. Byers*, 25 N. Y. 826; *Taylor v. Woods*, 5 Atl. 818; *Hoey v. Pieron*, 30 N. W. 692; *Lombard v. Dows*, 23 N. W. 649.)

Whatever the character of the remaining indebtedness of the chattel mortgage, the fact that the instrument was executed in part with the intention participated in by both parties to mortgage the whole property of the firm and that part of the consideration was fraudulent will

vitiate the whole instrument, and destroy it as a support against the legal attacks of attaching creditors.

If it is fraudulent in part, it is fraudulent altogether. It will not be sustained to cover even the actual debt, which is honestly stated in the mortgage. (*Winstead v. Hulic*, 32 Kan. 568 ; *Marbourg v. Lewis*, 32 Kan. 636 ; *Wallock v. Wylie*, 28 Kan. 138).

Even if the transaction with Vance was not of the character here described, even if the conveyance of the real estate by warranty deed had not been declared in the testimony, as well as in the warranty deed, to be a sale and absolute conveyance and a discharge of the debt, and if, in fact, the provision of the mortgage to secure and pay the consideration of twenty-three hundred dollars to A. H. Vance entered in the chattel mortgage, was simply an additional encumbrance upon the property of defendants, to secure the debt of nineteen hundred dollars loaned a few months before had not then been paid by the sale and conveyance of the real estate, the taking of the additional security by the chattel mortgage would, itself, be considered as an evidence of fraud, for creditors "will not be permitted to pile security on security unnecessarily to the detriment of other creditors."

Such a transaction would amount to a covering up of the defendant's property and its tendency would be to deter creditors from and delay them in attempting to have the property applied to the payment of their debts, and must necessarily be regarded as suspicious, and if not satisfactorily explained, fraudulent, and under any circumstances, and however explained, is yet such evidence of fraud as should go to a jury and be submitted to them to be passed upon for sufficiency.

When upon the 5th day of July, 1887, the defendant

Louis H. Wolf, deeded lot No. 15, Greenwood avenue,. Potwin subdivision, in the city of Topeka, to his own wife, and when in May, 1890, the defendants transferred lots 21, 22, and 23 in block 34, in Oklahoma City, stated in the deed to be worth about forty-seven hundred dollars, to the mother of the defendant, Louis H. Wolf, and the wife of the defendant, W. F. Wolf, and when on July 23, 1890, the defendant, W. F. Wolf, and Georgia Wolf, his wife, deeded lot No. 20, Greenwood avenue, in the city of Potwin Place, Topeka, Kansas, to their daughter, Laura V. Vance, who was the wife of A. H. Vance, the mortgagee, in the chattel mortgage in question, the fair, open, honest natural and proper course of proceeding, by the grantees, the mother, daughter and wife, respectively, of the defendants, and the son-in-law and brother-in-law of the defendants, respectively, would have been to place these conveyances immediately upon record. They conveyed property variously estimated in the evidence at from twenty-five to thirty thousand dollars, but they were withheld, in one case for three years and a half, in another for eight months and in another for six months, while the defendants proceeded falsely to represent that they owned real estate in Oklahoma City valued at twelve thousand dollars, and real estate in Topeka, valued at twenty thousand dollars, and to procure upon such representations large extensions of credit, including that sued for in this case, to which extensions of credit, so fraudulently obtained, the grantees of the various parcels of real estate mentioned, directly contributed by withholding deeds therefor from the record and concealing the same, and when the chattel mortgage now under examination was executed and recorded, that A. H. Vance, acting for himself and for Laura V. Vance, his wife, and as the agent for the other

beneficiaries of the chattel mortgage, the deeds for the
real estate were, therefore, simultaneously produced and
filed for record.

When it is considered, as shown by the evidence,
that the said A. H. Vance was an attorney of considera-
ble experience, that all the parties interested as benefi-
ciaries in the chattel mortgage were persons of either
large business experience or considerable means and of a
high degree of intelligence with respect to business
methods, and that the deeds for real estate were all made
to and in the hands of the grantees, all connected by the
closest ties of blood and marriage, by such close connec-
tion likely to be the depositaries of the most secret con-
fidences of the defendants, and that all of said deeds
having been theretofore reserved from record, were then
simultaneously recorded at the same point of time with
the chattel mortgage in question, we must regard all as
parts of one transaction, long considered and prepared
for, and then consummated when A. H. Vance, for him-
self and as agent, knew that one suit had been brought
against the defendants, judgment obtained, and that exe-
cution was likely to issue thereon at any time, and that
they had long been in an insolvent and failing condition,
and were unable to pay their debts when they left Topeka,
and opened the stores at Oklahoma City and Guthrie.

There are in this transaction and in the care with
which, through a long period of time, the conveyance
made by the chattel mortgage was prepared for, many
evidences of fraud reflecting upon the chattel mortgage
itself, either of which would be sufficient to require that
the evidence in the case should be balanced and weighed
for sufficiency, a circumstance requiring that the evi-
dence should be passed upon by a jury, sworn to try the
facts truly, or by a court trying the facts.

The previous grants of real estate to the nearest relatives for sums of money amounting to thirty thousand dollars, not recorded, the withholding of the deeds and the placing of the deeds upon the record simultaneously with the taking and recording of the chattel mortgage, the whole transaction being in charge of a practicing attorney of long standing, acting in behalf of business men of wide experience, the whole constituting a transaction not consummated until suits were pending and execution impending, when the world must know of the insolvency of the defendants, and the chattel mortgage showing false recitals, and that the mortgage itself was not turned over to the chattel mortgagees to take satisfaction for their debts, but upon the provision that they were to convert the whole into money, and to pay themselves out of the proceeds, that is, money, and to pay the balance of the money over to the mortgagees; that such a collection of evidences of fraud so reflects upon the execution of the chattel mortgage itself that we shall hold that the finding of the court upon the demurrer should have been in behalf of the plaintiffs instead of the defendants, and that judgment should have been rendered for the plaintiffs accordingly.

It was also, however, assigned by the plaintiffs, that the court erred in overruling the plaintiffs' application to amend their complaint and attachment affidavit.

Under this assignment the plaintiffs contended that the manifest fraud perpetrated to secure the extension of credit, and the fraudulent character of the chattel mortgage, entitled them to sue at once for payment upon the contract when the fraud was discovered, and that the plaintiffs were not limited to an action for damages.

We think this contention should be sustained. The goods were shipped from New York as the result of a cor-

respondence begun by the defendants in error, making a proposition to purchase the goods of plaintiffs, whose business was located in New York. While the goods were shipped to Guthrie and Oklahoma City, the freight upon them was paid by the defendants in error from New York City, the defendants took possession of them at that point, and the contract of sale was completed when they were delivered to the railroad depot there.

New York City was, therefore, the place of the contract, and the rule is, that the place of the contract governs the terms of the contract, and will also govern as to all facts determining the maturity of the amount due.

It has, in that state, been held with uniformity that, if the defendants purchase and obtain possession of goods upon a credit procured by fraudulent representations, that plaintiffs need not wait until the expiration of the time named in the contract in order to sue and recover, but may sue at once upon the discovery of the fraud, and may sue upon the contract, and are not required to sue in an action which shall sound in damages. (*McGoldrick v. Willetts*, 52 N. Y. 612; *Roth v. Palmer*, 27 Barbour 652; *Mason v. Bovey*, 1 Denio, 69; 42 N. Y. 120; *Weigand v. Schell*, 3 Keyes, 120; *Kingman v. Hotaling*, 25 Wend. 423; *Musser v. Lessner*, 67 How. Pr. 509; Drake on Attachment, § 29.)

We think, upon the strength of these authorities, and that inasmuch as the fraudulent contraction of the debt was alleged in the attachment affidavit, that the amendment of the attachment affidavit was unnecessarily sought for by the plaintiff, by which they sought to show that the defendants had entirely disposed of the property purchased of plaintiffs, and that, therefore, it was out of their power to recover by replevin, and that having the right to rescind the contract, as to the time of payment,

and sue forthwith for the amount due, that the court should have permitted the filing of the amended attachment affidavit, showing the further fact that the defendants had entirely disposed of the property. (Statutes of 1890, § 4435, p. 819; *Bun v. Prickard*, 7 Ia. 56; *Hanna et al. v. Barrett*, 18 Pac 497; *Greenwoan v. Cohll*, 61 Ind. 201; *Hedricks v. Hedricks*, 55 Ind. 78; *Ferguson v. Ramsay*, 41 Ind. 411; *Tilton v. Cofield*, 93 U. S. 163; *Schnell v. Burch*, 47 Ark. 560; *Noland v. Royster*, 36 Ark. 365; *Ashier v. Mather*, 27 Ind. 381.)

The judgment of the court below is reversed, and judgment will be entered for the plaintiffs, for the amount of their claim, and the attachment proceedings are sustained.

Bierer, J., having been of counsel, not sitting; Scott, J., and Tarsney, J., concurring; Dale, C. J., dissenting.