R. C. EDMISSON v. DRUMM-FLATO COMMISSION COMPANY, a Corporation.

(Filed September 10, 1903.)

1. DEMURRER TO EVIDENCE—Admits, What. A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn from the evidence.

2. SAME—Province of Court. On a demurrer to the evidence, the court cannot weigh conflicting evidence, but will treat the evidence as withdrawn which is most favorable to the demurrant.

3. CHATTEL MORTGAGE — Statutes Construed—Lien—Possession. Under Oklahoma statutes, a chattel mortgage creates a lien only upon the mortgaged chattels, and in the absence of specific agreement to the contrary, the mortgagor is entitled to possession, and the mortgagee is only entitled to possession after condition broken for the purpose of foreclosure and sale in order to divest the title of the mortgagor, and such sale must be had in the manner prescribed by law, or according to the terms of the power contained in the mortgage.

4. CHATTEL MORTGAGE—Consideration—Delivery of Possession. An agreement to do that which a person is already bound to do, does not constitute a sufficient consideration for a promise. But an agreement by the mortgagor to deliver the mortgaged chattels or a specified portion in full payment of the mortgage debt, imparts a sufficient consideration to support the promise to satisfy the indebtedness. The mortgagor parts with his title, and the mortgagee obtains title and possession of that which he only had a lien upon.

5. EVIDENCE—Sufficient, When. Evidence examined and held to be sufficient to entitle plaintiff to recover as against a demurrer.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before John L. McAtee, Trial Judge.*

*Alexander & DeGeer, Houston & Marum* and *Harper S. Cunningham,* for plaintiff in error.

*Dale & Bierer* and *Botsford, Deatherage & Young,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, R. C. Edmisson, who was plaintiff in the court below, brought an action in the district court of Woods county against the Drumm-Flato Commission Company, a corporation, and J. R. Gober, defendants, to recover several thousand dollars for an alleged conversion of several hundred head of cattle. The plaintiff in his petition alleged that on the 22nd day of November, 1899, he was indebted to the Drumm-Flato Commission Company in a large sum of money, which was evidenced by several promissory notes, and all secured by chattel mortgage upon certain cattle owned by plaintiff. That on the 22nd day of November, 1899, the plaintiff and said corporation entered into a written contract concerning said notes, mortgages and cattle, which contract as set out is as follows:

"This agreement made and entered into this 22nd day of November, 1899, by and between Drumm-Flato Commission Company, party of the first part, and R. C. Edmission, party of the second part.

"Witnesseth: That said R. C. Edmission, the second party, hereby agrees to deliver to Drumm-Flato Commission Company nineteen hundred (1900) head of cattle, as they run on the range (provided the same can be found to make this number of head), of various ages, on which said Drumm-Flato Commission Company hold a chattel mortgage. The

parties of the first part agree, in consideration of the delivery of the above mentioned number of cattle, to deliver to said second party, R. C. Edmisson, all of his notes, mortgages and other indebtedness due said Drumm-Flato Commission Company to this date.

"It is further agreed by the parties above mentioned that if Mr. Edmisson gathers as many as 200 head after the delivery to Drumm-Flato Commission Company of said nineteen hundred head of cattle, he is to turn over 100 head of the 200 head gathered, or in case Edmisson delivers to said Drumm-Flato Commission Company. as many as two thousand head of cattle, any residue thereafter is to be retained by said Edmisson.

"In witness whereof we have hereunto set our hands the day and year above written.

"R. C. EDMISSON,

"DRUMM-FLATO COMMISSION COMPANY,

"per H. DRUMM, Pt."

It was further averred that in pursuance of said contract plaintiff did gather and deliver to the defendant, as soon after November 22 as possible 1,710 head of cattle, and immediately thereafter gathered and held in close quarters for delivery to said defendant 350 other head of cattle, or so many as was due on said contract, on the promise of said defendant that it would send its agent, one Bryson, to receive said cattle. That plaintiff kept said cattle ready to deliver for about three weeks, awaiting the arrival of defendant's agent to take said cattle.

That the plaintiff was, is and at all times has been willing and ready to deliver the remainder of said cattle. That in December, 1899, one James R. Gober, an agent and employe of the defendant, at its direction and with its knowledge,

and without the knowledge or consent of plaintiff, wrongfully and unlawfully took possession of and drove away all of plaintiff's cattle, amounting to four hundred head, and by intimidation and threats kept the plaintiff out of possession of his said cattle, and afterwards said Gober, as agent of the defendant, wrongfully, unlawfully and forcibly took possession of 300 head of cattle belonging to plaintiff, and that the defendant thus prevented the plaintiff from further complying with said contract.

That the defendant on the —— day of November, 1899, wrongfully, forcibly and without right, took, carried and drove away and appropriated to its own use 410 head of the plaintiff's cattle, of the value of $8,000, and to plaintiff's damage in the sum of $8,000, and plaintiff prays judgment against the defendants for the sum of $8,000 damages, and that the remaining cattle of said herd be subjected to payment of his claim.

To this petition the defendant, Drumm-Flato Commission Company, answered, first, by general denial; second, by setting up the notes and mortgage executed by Edmisson to the commission company, and averring non-payment, and claiming title to said cattle by virtue of said mortgages, and also by alleging that the contract described in plaintiff's petition was without consideration. The plaintiff filed reply and closed the issues. The cause was dismissed as to Gober.

The cause went to trial to a jury, and after the plaintiff had introduced his evidence and rested, the defendant demurred to the evidence; the court sustained the demurrer, and rendered judgment for the defendant for costs.

The plaintiff appeals, and the only question necessary

to determine is whether the court erred in sustaining the demurrer to plaintiff's evidence.

The execution of none of the notes, mortgages or contracts pleaded are denied, under oath, hence their execution is admitted.

The plaintiff's evidence fairly establishes the fact that after the execution of the contract set out in the petition, that Edmisson went to the range where the cattle were on pasture, and after procuring several assistants rounded up and counted out 1710 head of the cattle referred to in the contract, and these were turned over to and accepted by the agent of the commission company. While these were being driven to the railroad for shipment, Mr. Edmisson and his assistants gathered up and held in a close pasture about 350 head of other cattle, and notified the agent of the defendant that they were ready for delivery, or at least a sufficient number to make out the 2,000 head of cattle. The agent, who was then engaged in loading and shipping the ones received, refused to take any more at that time, as the cattle were thin and weak, and stated that he would return for the remainder after he had shipped the ones already received. That Edmisson made efforts to get the commission company to send an agent to get the cattle, which they failed to do. That very shortly afterwards, Gober went into the pasture and forcibly drove away all the cattle belonging to plaintiff, and afterwards gathered all that he could find on the range or in the pastures, of the brands mentioned in the mortgage, and took possession of them, and by force of arms held them for the defendants. There is some question raised by the defendant in error as to whether the proof shows that Gober was act-

ing for the defendant. As against a demurrer to the evidence, there can be no question but what Gober was acting for the defendant. He stated that he was acting for the commission company, and showed a letter from the president of the company, directing him to gather and hold these cattle. These cattle taken by Gober were appropriated by the commission company. While there is some conflict in the testimony, the rule on demurrer is that the court cannot weigh conflicting evidence, for that would be invading the province of the jury, but the court will in such cases treat the evidence which is most favorable to the party offering the demurrer, as withdrawn. (*Jaffray v. Wolf et al.*, 4 Okla. 303; *Rogers v. Hodgson* 46 Kan. 276; *Wolf v. Washer*, 32 Kan. 533; 6 Ency. Pl. and Pr. 445.)

A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences which may be logically and reasonably drawn from the evidence. (6 Enc. Pl. and Pr. 441; *Jaffray v. Wolf*, 1 Okla. 312; *Jaffray v. Wolf*, 4 Okla. 303; *K. C., Ft. S. & G. R. Co. v. Cravens et al.*, 43 Kan. 650; *Christie v. Barnes*, 33 Kan. 317; *Wolf v. Washer*, 32 Kan. 533; *Bequillard v. Bartlett*, 19 Kan. 382; *Merket v. Smith*, 33 Kan. 67; *Brown v. A., T. & S. F. R. R. Co.*, 31 Kan. 1.)

In order to determine the effect of the demurrer to the evidence, it is necessary to determine the intent and purpose of the agreement entered into between the parties on November 22, 1899, as well as the validity of the same.

It is conceded that Drumm-Flato Company had chattel mortgages upon all the cattle embraced in this controversy, to secure certain promissory notes executed from Edmisson

to the company.  These mortgages constituted only a lien on the property of plaintiff.  Both the title and the right to possession was in Edmisson until after condition broken, and the right of possession for the purpose of extinguishing plaintiff's title passed to the mortgagee.  It is true the mortgages contained a power to sell and authorized the mortgagees on default to take possession of the cattle and sell them at private or public sale, and account for the proceeds.  But the actual sale by the mortgagees was necessary in order to divest the title of the mortgagor.  In this respect our statutes control and establish a different rule from that which usually obtains.

In the case of *Everett v. Buchanan,* 2 Dak. 249, Mr. Justice Shannon gives a comprehensive and valuable exposition of the laws of Dakota Territory upon the subject of chattel mortgages, and as we adopted the Dakota mortgage and lien laws, the same rules are applicable here.  It was there said:

"The debtor or mortgagor continues to be the owner of the property hypothecated until his title is divested by such sale as the law requires; and the creditor or mortgagee, has only a right to cause the property to be sold in a legal manner upon non-performance, and the proceeds to be appropriated in payment of his debt.  This right is limited to the power to sell in a lawful mode, and the title comes from the sale.  The mortgagee has the power to make his lien effectual by following up the steps of the law, and consummating his security by an authorized sale.  His remedy is against the property itself, by making that a specific title which was before but a lien.  He cannot usurp the title and confer it upon one who is privy to or has notice of the wrong."

The seizing of possession under a power to sell, does not of itself affect the nature of the mortgagee's interest.  It

does not enlarge or abridge his interest, or convert what was before a security into a title. It is a step preliminary to the sale by which alone the ownership is changed. With possession, but without due sale, the mortgage remains but a lien to be extinguished by sale, or a wrongful conversion. Possession lawfully acquired virtually transforms the mortgage into a pledge, and the pledgee obtains not a common law lien, but the mere right to sell.

At the time the last agreement was entered into between Edmisson and the commission company, the company had a lien upon the cattle in question. These cattle were of divers ages and various kinds; they were loose on the range or in large pastures, and must be gathered, cut out and possession obtained by the mortgagees, after which, in order to divest the title of Edmisson, it was necessary to either foreclose in one of the statutory methods, or sell under the power contained in the mortgages. With these conditions existing the parties made a new agreement on November 22, 1899, and the same was partly executed by the delivery to the mortgagees of the 1,710 head of cattle. To give this agreement any legal effect whatever, it must be held to constitute an agreement to sell, to pass title. It will not be presumed that the parties were trifling with each other, or that they were doing useless and futile acts. The company already had a lien, and Edmisson had the title and possession. In order to enforce the lien, the company must first get possession, and then divest title, after which they must account for the proceeds. The means necessary to gather up large herds of cattle of all ages, scattered over the range, with thousands of others, or in large pastures where other cattle

are kept, is of such common notoriety that courts will take judicial knowledge of the same. By the terms of the agreement relied on by the plaintiff, the mortgagor changed a lien to an absolute title. He sold and agreed to deliver to the commission company a certain number of cattle upon which they had a lien, and agreed to deliver the cattle to the company. In consideration of which the company agreed to deliver to him all his notes and mortgages, and evidences of indebtedness. In other words, he sold to the company 1900 head of cattle on one contingency, or 2,000 upon another, in full satisfaction of all he owed the company, and the company agreed on delivery of the cattle to surrender all the paper it held against him. This is the only reasonable or rational construction to give this contract, and attribute good faith to the contracting parties. The contention of defendant in error is, and we are told that the district court so held, that the new agreement is without consideration, as by its terms Edmisson is not required to do anything which he was not required to do under the mortgages, and a number of cases are cited by counsel supporting the doctrine that where one is obligated to perform certain acts, that a new agreement requiring performance of the same act is without consideration and void. We do not question the rule contended for, but in our judgment it has no application to the facts shown by the record in this case. The consideration to support a promise may be either a benefit accruing to the promisor, or a loss or disadvantage to the promisee. To give a consideration value sufficient to support a promise, it must be either such as deprived the person to whom the promise was made of a right which he before possessed, or else con-

ferred upon the other party a benefit which he could not otherwise have had. By the terms of the last agreement, Edmisson by the delivery of the cattle to the commission company and the surrender of his interest in them, deprived himself of the title in the cattle, and of the right to have the mortgage foreclosed, and the agreement conferred upon the commission company the absolute title to the cattle; whereas, under the mortgage, it had only a lien, and was out of possession. There was a sufficient consideration for the new agreement, and the commission company having accepted the greater portion of the cattle under the terms of the agreement, and appropriated the same to its own use, should not now in the absence of clear proof, be permitted to say that the contract was without consideration.

Treating the contract as valid and enforceable, does the evidence show a sufficient compliance or effort to comply with it on the part of Edmisson? As against the demurrer, the evidence shows that he delivered to the company 1,710 head of these cattle, and then rounded up and held out 350 additional head, and tendered them to the agent of the company. This was all that he was required to do by the agreement, and was all he could do under the conditions existing. The company took and appropriated the 1,710 head, but declined or at least failed to accept the remainder offered, and subsequently directed Gober to seize all he could find, which he proceeded to do, and turned them over to the commission company or accounted to them for them. We think this evidence sufficient to entitle the plaintiff to a judgment in his favor. What the amount of the damage is, must be left to the jury.

29—Vol 13

The court erred in sustaining the demurrer to the evidence.

The judgment will be reversed at the costs of the defendants in error, and cause remanded to the district court, with directions to grant a new trial.

Gillette, J., absent; all the other Justices concurring.