**MIDLAND SUPPLY COMPANY, Inc., Appellant,**

v.

**AMERICAN DRILLING COMPANY, Inc., and David L. Dooley, Trustee of American Drilling Company, Inc., Appellees.**

No. 6796.

United States Court of Appeals Tenth Circuit.

March 14, 1962.

Rehearing Denied April 24, 1962.

Wayne Coulson, Wichita, Kan. (G. M. Fuller, John L. Smith, Lewis G. Mosburg, Jr., Ted J. Davis, Oklahoma City, Okl., Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill and Gerrit H. Wormhoudt, Wichita, Kan., and Homer V. Gooing and Hugo T. Wedell, Wichita, Kan., of counsel, were with him on the brief), for appellant.

C. D. Stinchecum, Oklahoma City, Okl. (Howell & Stinchecum, Oklahoma City, Okl., of counsel, were with him on the brief), for appellees.

Before PICKETT, LEWIS and HILL, Circuit Judges.

LEWIS, Circuit Judge.

The case at bar arose during the course of reorganization proceedings brought by American Drilling Company, Inc., debtor, under Chapter X of the Bankruptcy Act. The appellant creditor, Midland Supply Company, Inc., filed proof of a secured claim in the amount of $130,601.49. The trustee objected to the claim, asserting that a large portion of the claimed debt had been paid, that the amount of $67,460.00 was the liability of another corporation, Domestic Oil Corporation, and that transactions between American, Domestic and Midland with regard to the debt amounted to a fraudulent transfer and void as against the trustee under Section 70, sub. e, of the Bankruptcy Act.[1] The controversy was submitted to

---

1. 11 U.S.C.A. § 110, sub. e (1) : "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: *Provided, however,* That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from

a Special Master who found and concluded that Midland's claim was allowable only in the amount of $15,138.74 plus interest. The District Court for the Western District of Oklahoma adopted the findings and recommendations of the Special Master and this appeal followed. The general question presented is whether the lower court correctly concluded that monies paid by American to Midland but credited by Midland to Domestic constituted a fraudulent transfer from American to Domestic.

American is a drilling corporation wholly owned by Edward E. Brook and created to complement the business function of Domestic, a production company also controlled by Mr. Brook through ownership of 75.69 per cent of its stock. Although offices and office personnel were jointly maintained, the two companies had different directorates, negotiated separate business transactions and kept separate accounting records. Field employees were separately employed and paid. American was formed in 1957 with a capitalization of $500.00. Domestic at such time had been operating successfully for about two years.

Because American was in essence a paper corporation it was necessary for that company to purchase upon credit the equipment and supplies necessary to the operation of a drilling company. From October 1, 1957 to April 14, 1958, American made four purchases of drilling equipment from appellant Midland and issued four separate promissory notes payable in installments for the purchase prices, secured, in all but one instance, by chattel mortgages upon the equipment purchased. The notes, at Midland's request, were also signed by Domestic but the mortgages were not, title resting solely in American. Payments upon this total indebtedness of $179,750.00 remained current through October, 1958. From

that date, although it had other general creditors whose claims exceeded $100,-000.00, American issued to Midland various assignments of proceeds from drilling contracts and consolidation notes and mortgages which secured both American's indebtedness and also the open account indebtedness of Domestic. In turn, Domestic also executed and delivered to Midland documents securing the indebtedness of both corporations. Payments received by Midland from American, mostly during 1959, were credited by Midland to both the accounts of American and Domestic and effected a reduction in Domestic's open account indebtedness by the sum of $46.013.28.

It is not disputed that Brook directed and approved the allocation of payments made by American nor that Midland was fully aware of the financial status of both American and Domestic upon the accounts and had applied constant pressure coupled with threat of foreclosure to expedite and obtain payment.

From these facts the court below concluded that the application of payments from American to the open account obligations of Domestic in the amounts of $46.013.28 [2] was for the purpose of obtaining a greater lien on the assets of American to the detriment of other creditors and thus constituted a prohibited transfer in view of American's insolvency from December 1958 through December 1959.

The appellant creditor first attacks the disallowance of its claim upon the ground that the record contains neither evidence nor finding that American's transfer of funds was made at a time when the debtor had insufficient property subject to execution with which to pay its indebtedness in full, nor that the transfer resulted in placing the debtor in that situation. The contention is faulty in premise under Oklahoma law for the test

and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws "

2. The balance of Midland's claim is made against the security of American's assets for Domestic's debt to Midland. We are not now concerned with this aspect of the claim.

of insolvency is precisely defined in Chapter 2 of Title 24, Debtor and Creditor, of the Oklahoma Statutes:

"A debtor is insolvent, within the meaning of this Chapter, when he is unable to pay his debts from his own means as they become due." 24 O.S. A. § 32 [3]

And that section has been interpreted by the Oklahoma Supreme Court as applying to business obligations thus:

" 'Insolvency,' when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of business." Illinois Refining Co. v. Illinois Oil Co., 130 Okl. 27, 264 P. 904; Grant Drilling Co. v. Rebold, 181 Okl. 479, 75 P.2d 172; Menager v. Exchange Nat. Bank of Tulsa, 159 Okl. 278, 15 P.2d 35.

█ Exhibits and direct testimony in this case demonstrate the correctness of the finding that American Drilling Company was unable to meet its debts as they became due and hence insolvent within the meaning of the Oklahoma statutes permitting a creditor to bring suit to set aside a conveyance if made in fraud of his rights as a creditor.

Midland also contends that neither the evidence nor the findings adequately show the perpetration of actual fraud and asserts that such a finding is necessary in a suit to set aside a conveyance under Oklahoma law. Claiming that the record shows that the transfer was made for valuable consideration, contrary to the Master's finding, it asserts that the transfer amounted only to a permissible preference even were this not so.

24 O.S.A. § 8 provides:

"In all cases arising under the following section, or under the provisions of this chapter, except as oth-

erwise provided in the second preceding section, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

Although the Special Master refused to make a finding of actual fraud or intent to defraud, he did include within his conclusions:

"It can only be concluded that the application of the payments from the American Drilling Company to the open account obligations of Domestic Oil Corporation was for the purpose of retaining a greater lien on the assets of the American Drilling Company, to the detriment of the other creditors."

█ Cases brought under Title 24 O. S.A. do not require proof of the elements of actual fraud where the circumstances of the transfer are such as to create a situation calling for the application of the doctrine of constructive fraud, 15 O.S.A. § 59. As the Oklahoma Supreme Court stated in its syllabus to McRoberts v. Upsher & Upsher, 175 Okl. 145, 52 P. 2d 1070:

"2. Though a conveyance of real estate may be supported by a fair and valuable consideration, if made and accepted in bad faith, or for the purpose of hindering, delaying, or defrauding creditors, it will be set aside at the suit of a creditor where a showing to that effect is made."

It has been held by this court, interpreting Oklahoma law, that where the creditor charged with receiving the unlawful transfer has such control of the debtor as to enable the creditor to unfairly deplete the assets of the debtor when insolvency is present or imminent, Section 11,[4] pertaining to permissible

---

3. 25 O.S.A. § 2: "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."

4. 24 O.S.A. § 11: "Any person in this State indebted to other persons shall have the right to prefer one or more of such creditors in good faith to secure a valid debt, which preference may be manifested by payment, by mortgages, either

**132**

preferences, does not apply. North American Car Corp. v. Shell Petroleum Corp., 10 Cir., 91 F.2d 564. The control and knowledge of the debtor's situation prevent the good faith receipt of such preferential payment. See Union Coal Co. v. Wooley, 54 Okl. 391, 154 P. 62, 19 A.L.R. 312.

 Edward Brook, being president of both Domestic and American, rather casually used the assets and credit of one to maintain the operation of the other. And the record makes it apparent that the chief creditor, Midland, was willing to extend unusual credit to the under-capitalized American Drilling Company because of its relationship to Domestic. Appellant's demands for further security upon American's obligations already secured by chattel mortgages is evidence of fraud, Jaffrey v. Wolf, 4 Okl. 303, 47 P. 496, and demonstrates the appellant's knowledge of the precarious financial condition of both companies. The conclusion of the Master that the action was taken in knowing derogation of the rights of other creditors of American is supported by the evidence.

The appellant finally points out, and correctly, that the record lacks a finding that any creditor of American's at the time of the subject transfers was still a creditor having a provable claim when American sought the shelter of Chapter X reorganization. The existence of such a creditor is of course necessary to sustain the conclusion that American's transfers had actionable fraudulent effect. Holt v. Jones, 208 Okl. 30, 252 P.2d 460; Coleman v. Alcock, 5 Cir., 272 F.2d 618. The record does indicate the existence of a large number of creditors, including the United States, during American's period of insolvency and there are other indications that the Special Master failed to give consideration to the continuing existence of a harmed creditor through oversight rather than

through lack of evidence to support the fact. We deem it necessary to remand the case for further consideration upon this single aspect and, of course, indicate no opinion as to what finding should be made.

The case is remanded for further proceedings in conformity with the views expressed.

real or chattel, or by the transfer of personal property or real estate, and if received by the creditor in good faith, such conveyance or mortgage shall be

valid in the hands of the mortgagee and constitute a preference to the extent thereof, subject to the laws relating to the filing and recording of mortgages."