WABASH RAILWAY COMPANY, Appellant, v. IOWA & SOUTHWEST-
ERN RAILWAY COMPANY et al., Appellees.

CORPORATIONS:   Insolvency—Acquisition of Corporate Property. by
1  Officers and Directors. The officers and directors of an insolvent cor-
poration, being bona-fide creditors thereof, may, after the corporate
property has been sold on execution, and after the period for re-
demption has expired, individually buy up, in good faith, and for
the sole purpose of protecting their claims, the certificate of pur-
chase, and may take individual title, which will be unimpeachable
by another creditor who had the same opportunity to protect him-
self, but ·declined to do so; and it is immaterial that this individual
title is worked out through a transfer to another corporation of
which the officers and directors were sole owners.

FRAUDULENT   CONVEYANCES:   Property  Transferred — Debtor
2  Holding Naked Title. A judgment creditor of a corporation may not
pursue and subject to the satisfaction of his judgment, property as
to which he never extended any credit, but the naked title of which
rested at one time in the corporation, as a mere matter of con-
venience to the actual owner.

**Headnote 1:** 14a C. J. p. 132 (Anno.)   **Headnote 2:** 14a C. J. p. 864.

*Appeal from Page District Court.*—EARL PETERS, Judge.

MARCH 10, 1925.

REHEARING DENIED JUNE 25, 1925.

ACTION in equity by a judgment creditor, to recover the
amount of the judgment from the directors of the debtor cor-
poration. The opinion states the facts. From a judgment dis-
missing the petition, the plaintiff appeals.—*Affirmed.*

*Ferguson, Barnes & Ferguson,* for appellant.

*William Emory Miller* and *Orr & Turner,* for appellees.

VERMILION, J.—This action was begun on November 25,
1919, against the Iowa & Southwestern Railway Company, the

Iowa & Southwestern Railroad Company of Iowa, and the ap-
pellees Farquhar, Richardson, Galloway, Tag-
gart, Abbott, Berry, Orr, Harvey, and the Clar-
inda Trust & Savings Bank. The petition al-
leged an indebtedness to the plaintiff and its
predecessors, to whose rights it succeeded, on the part of the
Iowa & Southwestern Railway Company, growing out of the
exchange of freight between the two carriers, aggregating $44,-
570.84. It was further alleged that the Iowa & Southwestern
Railway Company was insolvent, and had transferred all of
its property to certain of the other defendants in fraud of its
creditors; and judgment was asked against all of the defendants
for the amount. claimed. The defendants Iowa & Southwestern
Railway Company and Iowa & Southwestern Railroad Company
failed to appear, and on April 7, 1922, a judgment was entered
against each of such defendants for $60,000.02. On July 22,
1922, an amendment to the petition was filed, which set up the
judgments against the Iowa & Southwestern Railway Company
and the Iowa & Southwestern Railroad Company, and pleaded
the insolvency of both corporations. It alleged in detail acts
of the parties and transfers of property, which we shall refer
to as briefly as possible, and charged, in substance, that the
various acts and transfers were fraudulent; that the transfers
were without consideration; and that thereby all of the property
of the Iowa & Southwestern Railway Company was distributed
to the individual defendants, who were its officers and directors;
and that thereby they were personally liable to pay the plain-
tiff's judgment.

The marginal note beside the first paragraph reads:

1. CORPORATIONS: insolvency: acquisition of corporate property by officers and directors.

The answer of the defendants admitted many of the acts
and transfers so pleaded, and that the defendants Farquhar,
Richardson, Galloway, Taggart, Abbott, Orr, and Berry were
officers, directors, and stockholders of the Iowa & Southwestern
Railway Company, and that they received the proceeds of the
property of the Iowa & Southwestern Railway Company; denied
any fraud; and alleged, in substance, that they acquired such
property from a purchaser at execution sale, and applied the
proceeds in settlement of amounts due them. Many other allega-
tions are made which we shall have no occasion to consider.

The appellee Harvey denied any connection with the trans-

actions in question. We do not understand appellant to here claim any liability on his part, or on the part of the appellee Clarinda Trust & Savings Bank. The controversy here is between the plaintiff, appellant, and the defendants and appellees Farquhar, Richardson, Galloway, Taggart, Abbott, Orr, and Berry. We shall refer only to the latter as the appellees.

The essential facts are not in serious dispute. The following material facts are either admitted by the pleadings or established by the evidence:

The Iowa & Southwestern Railway Company, an Iowa corporation, in about 1913 constructed a line of railway from Clarinda to Blanchard, in Page County. It incurred indebtedness in the construction of its road, and various parties filed mechanics' liens against its property. An action was brought in the United States district court for the southern district of Iowa, southern division, to foreclose some of these liens. This action was defended by the corporation; but, on October 24, 1914, it resulted in a decree of foreclosure, establishing the priority of certain of the liens. Execution was issued on this judgment and levied on all the property of the railway company; and on March 10, 1915, the property, with some exceptions, was sold by the United States marshal to C. C. Barnes for $20,200, subject to redemption within a year; and a certificate of sale was issued by the marshal to Barnes. This certificate of sale was, on April 19, 1916, after the expiration of the year for redemption, assigned to Robert Abeles, and on April 20, 1916, by Abeles assigned to the Western Tie & Timber Company. Under the decree of foreclosure, Barnes had the first lien; Abeles the second, for a portion of his claim; the Western Tie & Timber Company the fourth; and Abeles the fifth, for the balance of his claim. On April 29, 1916, the Western Tie & Timber Company assigned the certificate of purchase to the Iowa & Southwestern Railroad Company, an Iowa corporation; and on June 8, 1916, the marshal executed to that corporation his marshal's deed for the property sold.

The judgment of Abeles established as the fifth lien was not satisfied by this sale, and was subsequently assigned to the appellees, who caused an execution to issue thereon, which was levied on certain other personal property belonging to the Iowa

& Southwestern Railway Company, not included in the first sale; and this property was sold to one Barron for $200. It is alleged in the answer that the individual appellees herein furnished the money paid by the purchaser at such sale.

The Iowa & Southwestern Railroad Company was organized by some of the appellees and certain individuals connected with or representing the Western Tie & Timber Company; but all of its stock, of which only a sufficient number of shares was issued to qualify its officers and directors, came into the possession of the appellees and one other. It is admitted in the answer that the defendants Farquhar, Richardson, Galloway, Taggart, Abbott, Orr, and Berry, and one McKinley, took charge of the Iowa & Southwestern Railroad Company of Iowa and its affairs, and were the only persons eventually owning any stock therein or having any interest therein. The money paid to the Western Tie & Timber Company for the marshal's certificate of sale was furnished by the appellees and McKinley. The exact amount is not shown, but it was about $28,000. No stock of the Iowa & Southwestern Railroad Company was issued for the money so furnished; and, as we understand, it never operated the railroad. After the execution of the marshal's deed to the Iowa & Southwestern Railroad Company, efforts were made by the appellees in various directions to secure financial backing for the road. In September, 1917, a contract was entered into between the Iowa & Southwestern Railroad Company of Iowa and S. Stephenson Sons Company, providing for the improvement and extension of the road. Following this, and in November, 1917, the appellees caused to be organized in the state of Maine a corporation, also named the Iowa & Southwestern Railroad Company. No stock of this corporation was issued, except such as was necessary for its officers to qualify. The appellees acted as such officers and directors; and alleged in the answer that the Maine corporation was organized in pursuance of the Stephenson contract, and to enable the Stephenson company to finance the road and carry out the contract. It is admitted that all the property of the Iowa & Southwestern Railroad Company of Iowa, being that acquired by that corporation by the marshal's deed, and also, as we understand, that purchased by the appellees through Barron at the later execution

sale, was transferred to the Iowa & Southwestern Railroad Company of Maine. No consideration was paid for the transfer. The United States government, being then engaged in the war with Germany, refused permission for the expenditure of the money necessary to rehabilitate the line from Blanchard to Clarinda, or the construction of any extension, as contemplated by the Stephenson contract. It was impossible to raise money by the sale of proposed bonds, and that contract was abandoned. The record contains minutes of meetings of the board of directors of the Iowa & Southwestern Railroad Company, but whether of the Iowa or the Maine corporation of that name, after its organization, does not appear. These minutes relate, in many instances, to efforts to dispose of the property. At such a meeting on October 10, 1918, at which all the appellees except Galloway were present, a motion was unanimously carried, by a recorded vote, to accept the offer of the Clarinda Iron & Metal Company of $88,500 for "all the rails on the right of way of the old I. & S. W. Ry. Co., including those in sidetrack and loose rails not laid, frogs, switches, angle irons, and spikes," and certain cars and equipment, including the property purchased through Barron at the second execution sale. On the same day, a written contract was entered into in the individual names of the appellees, as seller, and the Clarinda Iron & Metal Company as buyer, which recited that the seller owned "the old Iowa & Southwestern property," and sold and conveyed to the buyer property substantially as described in the minutes of the meeting of the directors above referred to. The property was sold as junk, and, owing to the high prices incident to the war, at a price much above the ordinary value of such material. It is admitted in the answer that the appellees and McKinley received the proceeds of this sale. The testimony shows that the proceeds were applied by the appellees and McKinley to reimburse them for the money furnished by them to purchase the marshal's certificate of sale from the Western Tie & Timber Company; to pay an indebtedness of $11,000 incurred by them in the effort to finance the project after procuring the marshal's deed; and in settlement of various amounts owed to the individuals by the original corporation, the Iowa & Southwestern Railway Company. A portion of this indebtedness was money

paid by some of the appellees to the appellant upon a bond given by them to secure the payment by the Iowa & Southwestern Railway Company of freights collected subsequent to the indebtedness here involved.  Other portions were for services rendered or materials furnished to, or money expended for, the original company.  As we have said, the exact amount paid for the marshal's certificate of sale is not shown; nor. are all the amounts of the various claims of the appellees against the original company shown with certainty.  It does satisfactorily appear, however, that the claims of the appellees were for bonafide debts due them, and that the amount received by them for the property exceeded by a substantial sum the aggregate of all their claims and expenditures.

In the fall of 1919, the Iowa & Southwestern Railroad Company of Maine conveyed, by quitclaim deeds, for an expressed consideration of one dollar and other good and valuable consideration, to the Union Trust Company, as trustee, all the real estate owned by it in Page County, and "the entire right of way of the Iowa & Southwestern Railroad Company."  About the same time, Galloway and Orr, as trustees, conveyed, by separate warranty deeds, to the Union Trust Company, as trustee, certain real estate, the title to which they had originally acquired, and at all times held, as we understand, for the Iowa & Southwestern Railway Company.  Thereafter, the Iowa & Southwestern Railroad Company of Maine and the Union Trust Company entered into a written trust agreement, which recited the making of the above mentioned conveyances, and provided that the Union Trust Company accepted the title to the real estate so conveyed, in trust for the use and benefit of the appellees Farquhar, Richardson, Berry, Galloway, Taggart, Abbott, and Orr, and of McKinley; and that the proceeds from the rental or sale of the property, after the deduction of expenses, should be divided equally among the beneficiaries.

I.  The appellant had no lien upon the property of the Iowa & Southwestern Railway Company until the rendition of its judgment, the lien of which would then have attached to any real estate owned by the corporation.  Long prior to that date, all of its property, save the real estate held in trust by the appellees Galloway and Orr, had been sold under executions

issued on the judgments against it in the Federal court. The rendition of these judgments had been resisted by the appellees, as officers of the Iowa & Southwestern Railway Company. The first execution was not issued at their instance. The sale thereunder was of practically all the property of the corporation. It had no other resources of any substantial amount, and was insolvent. . The appellees, before they acquired the property, made unavailing efforts to induce the stockholders to take the necessary steps to redeem from the sale. They had refused to do so, or to contribute, or to raise on their own credit any money for that purpose. With the expiration of the time for redemption, the right of the corporation in the property was cut off and lost. It is shown that the appellees were all creditors of the Iowa & Southwestern Railway Company. Their claims were unsecured. In this situation, they furnished the money to purchase the certificate of sale, and had it assigned to a corporation, the Iowa & Southwestern Railroad Company of Iowa, organized by or for them for that purpose, the stock of which they owned, and which they, as officers and directors, controlled; and the marshal's deed was thereafter issued to that corporation. So far as any claimed rights of the appellant in respect to the property acquired by the marshal's deed are concerned, such rights were either then complete or entirely nonexistent. That is to say, if the appellees, in so acquiring it, and having it transferred to the Iowa & Southwestern Railroad Company, took the property free from any equitable claim of the appellant's, while their subsequent conduct with reference to the property was a proper subject of inquiry, as bearing upon their purpose and good faith in acquiring it, it is plain, we think, that nothing done thereafter by them gave rise, *ipso facto,* to any such right in the appellant, as creditor of the Iowa & Southwestern Railway Company, as against the property, or as against the appellees on account of their acquisition of it. On the other hand, we do not understand it to be seriously disputed that, if at that time the appellant had a right, as creditor of the Iowa & Southwestern Railway Company, to enforce an equitable claim against them or against the property, nothing they did thereafter would operate to destroy or cut off that right. The question here is narrowed to the proposition whether appellees, being stockhold-

ers, directors, and officers of the Iowa & Southwestern Railway Company, and also unsecured or general creditors of that corporation, could, either as individuals or through a corporation organized for that purpose, the stock of which they held, purchase at, or acquire under, execution sale the property of the debtor corporation, free of any equitable right in another general creditor, as against the property or the purchaser. If the appellees acquired the property free from any such equitable right in the appellant, the latter cannot, as creditor of the Iowa & Southwestern Railway Company, complain of any subsequent disposition of it, or of its distribution among themselves.

The case is not one where, upon the foreclosure of a mortgage upon a railway, a plan of reorganization is agreed upon, whereby an interest in the property is preserved to the stockholders, to the exclusion of unsecured creditors. That the courts will in such cases protect the rights of unsecured creditors of the corporation, since they are superior to the rights of the stockholders, is the doctrine of some of the cases cited by appellant. As has been noted, the judgments in the Federal court were obtained only after defense made by the corporation; and no rights were preserved to the stockholders, save the right of redemption.

We have held, in *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223, and in *Farnsworth v. Muscatine Produce & Pure Ice Co.*, 177 Iowa 21, relied upon by appellant, that the creditors of a corporation do not in all cases have an equitable lien against the property of the corporation transferred to another; but that, where the property passes to one who is not a good-faith purchaser, in the ordinary course of business, a creditor has an equitable right to a lien which will be enforced in equity against such a purchaser; that the creditors in a proper case have an equitable right or lien upon the assets of a corporation, and may pursue this right, and have an equitable lien established against the property in the hands of one who is not a good-faith purchaser. In the *Luedecke* case, all the property of the corporation was sold to another corporation, and paid for by its stock issued to the holder of the stock in the selling corporation. It was held that the sale was not in the ordinary course of business, and a creditor of the selling corporation was given

a lien on the property sold.  The distinction between that case and this is apparent.  In the *Farnsworth* case, the property had been purchased from the receiver of the corporation by, or in the interest of, the stockholders, who organized a new corporation by which the business was continued; and it was held that there was a liability on the part of the new corporation and its stockholders to a creditor of the original corporation.  It was there claimed that the appointment of the receiver was an adversary proceeding, so far as the old corporation and its stockholders were concerned; but this contention was not upheld by the court.  On the contrary, it was found that the appointment of the receiver and the sale by him of all the property of the corporation were agreed to by the stockholders, who bought it and organized the new corporation to which it was transferred.  The case is in that respect clearly distinguishable from the case at bar.

It cannot be doubted that Barnes, the purchaser at execution sale, or Abeles, his assignee, or the Western Tie & Timber Company, the assignee of Abeles, would have taken the property free of any right or claim on the part of appellant.  There could have been, as against them, no claim on behalf of general creditors.  The property had once been applied to the payment of the original corporation's debts, and exhausted in so doing.  There was, in fact, no defect in their title, and no circumstance that would have entitled appellant to proceed against them or against the property for the satisfaction of its debt.  The appellant had, in fact, no outstanding equity or right as against them: they were good-faith purchasers.  *Bush v. Herring,* 113 Iowa 158; *Ettenheimer v. Northgraves,* 75 Iowa 28.  It was the title which they held under the execution sale that the appellees acquired; and that title, being subject to no claim or equity on the part of appellant, they took free from any such equity, no matter what their knowledge of the facts, unless their relation to the corporation was such as to give rise to such a right.

The relation of a director to the corporation is fiduciary in character.  While we have not unreservedly subscribed to the doctrine that the capital stock of a corporation is a trust fund in the hands of its directors, as trustees for the payment of its debts (*State Trust Co. v. Turner,* 111 Iowa 664; *Luedecke v.*

*Des Moines Cabinet Co., supra*), but have said that, in a proper case, the creditors have an equitable right or lien upon the assets of the corporation in the hands of one not a purchaser in good-faith, and in the ordinary course of business, we have also recognized certain limitations upon the right of a director to deal with the corporation in respect to its property. He is not, from the mere fact of his relation to the corporation, prohibited from becoming its creditor or taking security for his debt or enforcing such security; but his acts will be subject to close scrutiny by the courts, and must be in the utmost good faith, and fair. And this is true both as to the stockholders and creditors.

It was held in *Hallam v. Indianola Hotel Co.,* 56 Iowa 178, that a director of a corporation had an unquestioned right to become a creditor of the corporation; and that, at an execution sale, to make his debt he could buy the property of the corporation; but that he was bound to act in the utmost good faith. The rights of other stockholders only were involved in this case. In *Garrett v. Burlington Plow Co.,* 70 Iowa 697, it was held that a director holding a debt against the corporation could take payment or security in a good-faith and honest transaction, and could enforce security so taken. The rights of general creditors under an assignment for the benefit of creditors were involved. In *Ramsey v. Welch Co.,* 163 Iowa 324, it was urged that bonds and a trust deed of a corporation were wholly void, because made in part for the benefit of the directors, as creditors, and regardless of any question of fraud. It was said, on the authority of the cases last cited, that the rule in this state was adverse to the contention, and that:

"The rule thus announced is that such transaction will be scrutinized closely, and that the directors will be held strictly to fair dealing."

Only the rights of stockholders, as represented by the corporation, were involved.

This view of the limitation upon a director in dealing with the corporation and its property is in accord with that laid down by the courts generally. The right of a director who is also a creditor of the corporation to protect himself by buying the property of the corporation at execution or other forced sale,

where it appears that the corporation was unable to pay its obligations, or that he had done all that good faith required of him to protect its interest, is generally recognized. *Janney v. Minneapolis Ind. Exp.*, 79 Minn. 488 (82 N. W. 984, 50 L. R. A. 273), was a case where creditors of a corporation, who were also directors, after buying its property at an assignee's sale, sought to enforce a statutory liability, as against the stockholders. It was the claim of the stockholders that a resale should have been ordered, or the difference between the value of the property and the amount of the bid should have been applied on the plaintiff's claims. It was said that the relation between a corporation and its directors is a fiduciary one, and that, as a general rule, and upon sound principles of public policy, they are inhibited from buying for their own benefit the property of the corporation. The court further said:

"It is, however, equally clear upon principle that, where the legal title and control of all of the property of a corporation is vested in an assignee or receiver, in trust for the benefit of its creditors, and the court orders the property sold for the purposes of the trust, a director-creditor, having interests to protect, may in good faith purchase the property at such sale, and acquire thereby the absolute title thereto. * * * But in all such cases the director must act in the utmost good faith; for the transaction will be jealously scrutinized."

In *Snediker v. Ayers*, 146 Cal. 407 (80 Pac. 511), it is said:

"It violates no principle of law or equity to permit the judgment-creditor, even though he be a director of the debtor corporation, to become the purchaser at the execution sale of the corporation property."

In *Coombs v. Barker*, 31 Mont. 526 (79 Pac. 1), where the rights of stockholders were involved, it was said that a director might become a creditor of the corporation, and enforce his claim, and become a purchaser of corporation property at a judicial sale made by another creditor, and purchase the property from another purchaser at a judicial sale, subject to the qualification that his acts must be fair and honest, and he be not permitted to obtain any dishonest advantage over the corporation or its stockholders. See, also, *Twin-Lick Oil Co. v. Mar-*

*bury,* 91 U. S. 587 (23 L. Ed. 328) ; *Buchler v. Black,* 141 C. C. A. 459 (226 Fed. 703) ; *Stebbins v. Michigan Wheelbarrow & Truck Co.,* 129 C. C. A. 471 (212 Fed. 19) ; *Rhea v. Newton* (C. C. A.), 262 Fed. 345; *McClean v. Bradley* (D. C.), 282 Fed. 1011; *Wilson v. Hoffman* (N. J. Ch.), 50 Atl. 592; *Inglehart v. Thousand Island Hotel Co.,* 109 N. Y. 454 (17 N. E. 358) ; *Patterson v. Portland Smelting Works,* 35 Ore. 96 (56 Pac. 407) ; *Sebree v. Cassville & N. W. R. Co.* (Mo.), 212 S. W. 11; *La Veine v. Tiffany Springs & Land Co.* (Mo.), 187 S. W. 1186; *Ready v. Smith,* 170 Mo. 163 (70 S. W. 484) ; *Foster v. Belcher's Sugar Refining Co.,* 118 Mo. 238 (24 S. W. 63) ; *New Memphis Gaslight Co. Cases,* 105 Tenn. 268 (60 S. W. 206, 80 Am. St. 880)..

When we examine the facts, we find no evidence of bad faith on the part of the appellees. That they were creditors of the first corporation is not disputed. The enterprise was a failure; the corporation was insolvent; the operation of the railroad was unprofitable; and money was not to be procured to extend the line or improve the property. The recovery of the judgments upon which its property was sold was unsuccessfully resisted by the appellees, as directors; the stockholders had refused to raise the money to redeem; the officers of the appellant company were advised as to the situation, and had a representative at the sale, examined the property, and were consulted by appellees at about the time of the expiration of the period for redemption. The appellees purchased the certificate of sale after the expiration of the period for redemption, when all rights of the corporation or its creditors had been cut off, from one whose title was perfect as against the stockholders or creditors, paying their own money therefor. The additional personal property they purchased at execution sale without redemption. In their subsequent efforts to rehabilitate the property and extend the road, they were but dealing with their own property. The removable property was sold as junk under adventitious circumstances. The appellant failed to establish its rights as a creditor of the Iowa & Southwestern Railway Company, to recover against the appellees.

II. It is claimed in argument that the appellant, as a creditor of the Iowa & Southwestern Railroad Company of Iowa is

WABASH R. Co. v. IOWA & S. W. R. Co. [200 Iowa

entitled to recover of the appellees, on the theory that, as stock-holders, directors, and officers of that corporation, they distributed among themselves and appropriated to their own use its assets and property.

As we have said, the individual appellees furnished the money to purchase the certificate of sale. The property represented by it was in fact their property. They caused the certificate to be assigned, and the marshal's deed to be made, to the corporation composed of themselves, in which they were the only stockholders, for their own convenience. Since they were the only stockholders, the beneficial interest in, and the right to the enjoyment of, the property was not thereby changed. The corporation held the title to the property, and the appellees owned the corporation. Inasmuch as the property was acquired from a good-faith purchaser, they took it free from any claim on the part of the appellant, as a creditor of the Iowa & Southwestern Railway Company. It was theirs to do with as they saw fit, and they had a right to take the title in the name of the corporation composed of themselves; and no imputation of fraud, against the appellant as a creditor of the railway company, could arise from that fact, or from anything else they might do with it. We may ignore, as of no material importance, one way or the other, the conceded transfer to the Maine corporation. Considering the property, then, as having been distributed among the appellees by or from the Iowa & Southwestern Railroad Company of Iowa, we inquire, what right was thereby given to appellant, as against the appellees? The real and beneficial ownership of the property was still in .them. They merely distributed their own property, or its proceeds, among themselves.

Moreover, it does not appear that the Iowa & Southwestern Railroad Company was or is indebted to appellant, save as it appears from. the judgment by default against it. True, that judgment is a verity, and cannot be collaterally attacked; but that does not preclude an examination of the basis of the judgment, or of its force and effect, as affecting the claimed right to enforce it against the property or collect it from appellees. There is not only no claim that credit was extended to the railroad company on the strength of its apparent ownership of the

2. FRAUDULENT CONVEYANCES: property transferred: debtor holding naked title.

property, but there is no claim of a subsisting indebtedness on its part to appellant. The judgment was obtained on the claim that the railroad company was a fraudulent transferee of the property of the railway company. Whatever may be said of the effect of this adjudication as against the corporation, it was not an adjudication, as against the appellees, that the railroad company was or ever had been the actual owner of the property in question. It was rendered in an action—this action—where it was charged by appellant and admitted by appellees that they had long before acquired and appropriated the property and its proceeds. The appellees were, in the same action, resisting for themselves, as the real owners of the property, any claim of a liability on their part to account to appellant for the property so received. The judgment did not, we think, give appellant any standing as a creditor of the railroad company to hold the property or the appellees on account of their acquisition of the property, which at all times in equity belonged to them, merely because the legal title had, at a previous time, and as a matter of convenience, been held by the corporation. Equity looks to the substance,—not merely to the form. In a private corporation, even where its stock has been paid up and property acquired by the corporation, the substantial beneficial ownership is, in equity, except for corporate purposes, in the stockholders who own the corporation; and this is recognized in equity, where such view is necessary to do justice. 14 Corpus Juris 63. The court in *Anthony v. American Glucose Co.*, 146 N. Y. 407 (41 N. E. 23), said:

"We have of late refused to be always and utterly trammeled by the logic derived from corporate existence, where it only serves to distort or to hide the truth."

Appellant's claim is, and of necessity must be, we think, grounded upon its right as creditor of the railway company; and it must prevail, if at all, as such creditor. The appellees are the real and beneficial owners of the property, free from any such claim. The fact that, while they, as the real parties in interest, were at all times resisting the claim, appellant obtained a judgment against the corporation owned by them, that formerly for a time held the naked legal title, did not enlarge its right against them. The following authorities, in principle,

sustain our conclusion. *Bauernschmidt v. Bauernschmidt*, 97 Md. 60 (54 Atl. 637), and 101 Md. 148 (60 Atl. 437); *Pott & Co. v. Schmucker*, 84 Md. 535 (36 Atl. 592, 35 L. R. A. 392); *Seymour v. Spring Forest Cemetery Assn.*, 144 N. Y. 333 (39 N. E. 365, 26 L. R. A. 859); *Anthony v. American Glucose Co.*, supra.

We think the decree, so far as it relates to the property sold on the executions, is right.

Certain real estate of undisclosed value was admittedly held in trust by the appellees Orr and Galloway for the Iowa & Southwestern Railway Company. This, so far as the record shows, is now so held for appellees by the Union Trust Company. The Union Trust Company is not a party to this proceeding. Whether appellant may, in a proper proceeding, be entitled to subject the property so held by the trust company to its judgment, we do not determine.

The judgment is—*Affirmed*.

FAVILLE, C. J., and EVANS, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.