Grant D. BOYD, Gary C. Boyd, and Randall J. Boyd, Plaintiffs-Appellees,

v.

BOYD & BOYD, INC., Defendant,

and

Gene R. Boyd, Defendant-Appellant.

84–1974.

Court of Appeals of Iowa.

Feb. 26, 1986.

Thomas G. Schebler, of Schebler & Wine, Davenport, for defendants-appellants.

Dennis D. Jasper, of Stafne, Lewis, Jasper & Payson, Bettendorf, for plaintiffs-appellees.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

SNELL, Judge.

Defendant Gene R. Boyd was the president and sole stockholder of defendant Boyd & Boyd, Inc., a corporation engaged in the business of buying and selling rare coins, jewelry, gold and silver, and precious metals. Boyd & Boyd, Inc. was established in 1979. Gene transferred assets having a value of $116,000 to the corporation at that time. His capital contribution was $16,000 and a promissory note for $100,000 was executed to Gene by the corporation. In 1979 and 1980, Boyd & Boyd, Inc., acting through Gene, hired three of Gene's relatives as employees. Those three relatives, Grant, Gary, and Randall Boyd, are the plaintiffs herein.

In 1981 and 1982, the corporation experienced financial difficulties and failed to meet some of its payroll obligations. Five of the corporation's employees, including the plaintiffs and Gene, missed the same number of paychecks. The plaintiffs continued working for the corporation on the understanding that the wage arrearages would be paid eventually. However, in May of 1983 Gene fired all three of the plaintiffs after a family dispute. The wage arrearages remained unpaid when the corporation became insolvent shortly thereafter.

At the time of the corporation's insolvency, its debts included not only the wage arrearages, but also $105,000 owed to Gene Boyd on the aforementioned promissory note. After the present petition was filed, the corporation transferred all of its remaining inventory (valued at $86,000) to Gene in partial satisfaction of the corporation's debt to him.

Grant, Gary, and Randall Boyd filed the present action against both the corporation and Gene for unpaid wages. They also claim liquidated damages under Iowa Code Chapter 91A. Liquidated damages may be assessed in an amount equal to five percent of the unpaid wages when the employer has intentionally failed to pay the employee. The district court awarded the plaintiffs a judgment against the corporation and also against Gene individually, but did not assess liquidated damages. The district court held that Gene had breached his fiduciary duty as a corporate director by applying the corporate assets solely toward his own unsecured claim in preference over other debts at a time when the corporation was insolvent.

Gene has appealed from the district court's ruling. He does not dispute the insolvent corporation's liability for the unpaid wages. However, he contends the district court erred by imposing personal liability on him. He argues that "piercing the corporate veil" to impose personal liability on him was unwarranted, especially since the court stated in its decree that it could find no justification for subjecting Gene to individual liability on this theory. The court specifically found that the corporation was not undercapitalized and that it was not a mere sham or used to promote fraud or illegality. The court found that the corporation's indebtedness to Gene was legitimate and enforceable. Gene contends

that his disposition of the corporate assets was not so unfair that the court should disregard the general rule against imposing liability on a shareholder for debts of a corporation.

For purposes of this appeal we shall assume that the transfer of corporate inventory to Gene was in payment of a legitimate corporate obligation. There is also no question that this transfer to Gene occurred when the corporation was insolvent. All parties admit that the corporation could not pay its debts as they became due in the usual course of business. *See* Iowa Code § 496A.2(13) (1985). Therefore, the question we must address is whether the corporation was entitled to pay the debt of its sole shareholder and president in preference to third-party creditors at a time when it was insolvent. Because the Iowa Business Corporation Act does not address this subject, we must look to common law principles.

Most jurisdictions follow the view that officers and directors of an insolvent corporation, who are also creditors thereof, have no right to grant themselves preferences or advantages in the payment of their claims over other creditors. 15A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7468 at 224 (rev.perm.ed.1981); 19 C.J.S., *Corporations* § 1390 (1974); 19 Am. Jur.2d, *Corporations* § 1574 (1965). While some jurisdictions have statutory prohibitions of such preferences, in others, the courts invoke what is called the trust fund doctrine, and still others rely upon a theory that the directors as fiduciaries cannot be permitted to use their positions to benefit themselves at the expense of third-party creditors. According to 15A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7469 (rev.perm.ed.1981):

> When a corporation becomes insolvent and can no longer continue in business, the directors and other managing officers occupy a fiduciary relation towards creditors by reason of their position and their custody of the assets, and they cannot, by conveyance, mortgage, pledge, confession of judgment, or other-

wise secure to themselves, as creditors, any preference or advantage over other creditors, but the most that they can claim is the right to come in and share pro rata with the creditors in the distribution of the assets, and this rule applies to banking corporations as well as to others. More especially is this true with respect to a preexisting debt.

> \* \* \* \* \* \*

> This is the rule sustained by the great weight of authority, and the fiduciary relation occupied by the officers results from their duty to wind up the affairs of an insolvent corporation and pay the debts incurred. This rule is recognized even in states where corporations have the right to prefer creditors.

> The rules of the text are frequently applied to attempts by corporate presidents to secure preferences for themselves, and also to attempted transfers of the company's property to officers' wives in payment of alleged debts due to one or both of them.

> The denial of the right of directors of an insolvent corporation to obtain a preference by way of security or payment of debts due them by the corporation is not as a rule founded upon the trust fund doctrine, but upon the theory that it is inequitable that a director, whose position as to knowledge of conditions and power to act for the corporation gives him an advantage, should be permitted to protect his own claim to the detriment of others at a time when it is apparent that all the unsecured debts of the corporation are equally in peril, and that all of them cannot be paid. And some cases take the position that he is not even a creditor as against creditors having no connection with the corporation.

Early Iowa cases disagreed with this majority view and held that a corporation may prefer a creditor even though he is an officer or director. *See e.g., Rollins v. Shaver Wagon & Carriage Co.*, 80 Iowa 380, 45 N.W. 1037 (1890) (during insolvency director attached the corporation's property to secure indebtedness to him); *Warfield,*

*Howell & Co. v. The Marshall County Canning Co.*, 72 Iowa 666, 34 N.W. 467 (1887) (during insolvency all shareholders voted to grant a mortgage on all assets of corporation to secure indebtedness to officers, director and principal stockholders). However, in a later case, while not expressly overruling its prior decisions, the Iowa Supreme Court greatly modified its general rule. In *State v. Simmer Oil Corp.*, 231 Iowa 1041, 2 N.W.2d 760 (1942), the court was faced with the following factual situation. The corporation in question became insolvent. It deeded certain parcels of real estate to its president and director in satisfaction of money that he had previously advanced to the corporation. The trial court held that the conveyance was valid. On appeal the court stated:

It must be admitted that some of our earlier cases tend to support the decision below. Appellees cite the following authorities in support of their contention that a corporation may prefer a creditor even though he be an officer or director. (citations omitted)

These cases do declare generally the right to give such preference but our later cases, while not overlooking the prior decisions, have limited their apparent scope. In discussing the so-called "trust-fund" doctrine we said in *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223, 118 N.W. 456, 458, 32 L.R. A.,N.S., 616:

We do not recognize the trust-fund doctrine to the extent that it has obtained in some of the courts; but are of opinion that corporate creditors are entitled in equity to the payment of their debts before any distribution of corporate property is made among the stockholders, and recognize the right of a creditor of a corporation to follow its assets or property into the hands of any one who is not a good-faith holder in the ordinary course of business.

*Id.* at 1044, 2 N.W.2d at 762.

The court concluded that the corporate director was not a good-faith holder in the ordinary course of business and, therefore, the transferred properties were made subject to the corporation's other debts. *Id.* The court emphasized that its conclusion was not based on any actual fraud in the transaction. The court reasoned:

Assuming that one corporate officer may be given security over others, can this be done where the security is given for a pre-existing debt? There is a difference of opinion in the various jurisdictions, some holding that such security or preference may be given only for a contemporaneous loan or advance to the corporation. We think this should be the rule as better calculated to prevent fraud in the management of corporate property.

*Id.* at 1045, 2 N.W.2d at 762.

■ Thus, according to *Simmer*, Iowa allows an insolvent corporation to prefer its own directors or other officers if they are bona fide creditors and if the preference is given in return for a contemporaneous loan or advance to the corporation. Fletcher discusses the justification for this modified rule as follows:

Given the fact that an ongoing but insolvent corporation would have great difficulty obtaining a loan from any source unless it could offer security for the loan, it does not appear that prior creditors are prejudiced when security is offered to an insider as opposed to an outsider, so long as the security is given in return for a present loan.

*Fletcher*, § 7470 at 232. In other words, Iowa prohibits preferences to corporate directors granted to satisfy preexisting debts. This view is bolstered by the Iowa Supreme Court's decision in *State v. Exline Fuel Co.*, 224 Iowa 466, 276 N.W. 41 (1938). There the situation involved an insolvent corporation's director and president who entered into a mortgage and a conditional sale contract covering the corporation's mine property to secure his previous loan to the corporation. The court therein stated:

From the foregoing it is quite evident that the record sustains appellant's proposition that when Wells procured the two instruments upon which he declares, he,

Wells, as an incorporator, director, president, and person having the management and control of the affairs of an insolvent corporation, was occupying a fiduciary relation toward the stockholders and also the creditors. *Dawson v. National L. Ins. Co.*, 176 Iowa 362, 157 N.W. 929, L.R.A. 1916E, 878, Ann.Cas. 1918 B, 230; *Wabash R. Co. v. Iowa & S.W.R. Co.*, 200 Iowa 384, 202 N.W. 595; *Hoyt v. Hampe*, 206 Iowa 206, 220, 214 N.W. 718, 724, 220 N.W. 45; *Clapp v. Wallace*, 221 Iowa 672, 266 N.W. 493. A general rule governing the acts of a fiduciary is that he may not, directly or indirectly, appropriate the funds to himself without the concurrence of the cestuis with full knowledge of the facts. *Hoyt v. Hampe*, supra.

"The policy of the law is to put fiduciaries beyond the reach of temptation, by making it unprofitable for them to yield to it. To that end, an act by a fiduciary in which personal interest and duty conflict, is voidable at the mere option of the beneficiary, regardless of good faith or results." *Hoyt v. Hampe*, supra.

When the appropriation of assets by the fiduciary is accomplished by procuring execution of mortgage or lien instruments to secure the fiduciary to his personal advantage as a creditor, the policy of law just stated has application if personal interests and duty conflict. In *Garrett v. Burlington Plow Co.*, 70 Iowa 697, 702, 29 N.W. 395, 398, 59 Am. Rep. 461, it is said:

> It is true that the courts will scan with care, and even with suspicion, such transactions, and demand that they be accompanied by the utmost good faith. Not only is the sustaining of such contracts dependent upon a showing of utmost good faith and fairness but the holding in this jurisdiction is that the burden is on the fiduciary to make the showing. *Wabash R. Co. v. Iowa & S.W.R. Co.*, supra; *Hoyt v. Hampe*, supra.

*Id.* at 470–71, 276 N.W. at 43. The court concluded that the president's transactions were fraudulently invalid because they served his personal interests rather than preserving the corporation's assets for the corporation's creditors and stockholders.

▪ In the present case, the transfer of all of the corporation's inventory to Gene, the corporation's sole shareholder and president, was not in return for a contemporaneous loan, but rather for preexisting indebtedness. In fact, the transfer was claimed by Gene to be in partial satisfaction of money advanced to the corporation for its original capitalization in 1979. This transfer, then, would qualify as a preference prohibited under Iowa law.

We conclude that a preference granted to a person who has control of an insolvent corporation in satisfaction of a preexisting debt is contrary to principles of a fair, honest and open dealing. To hold otherwise and permit Gene to use his fiduciary position and inside knowledge to obtain preferential treatment at the expense of third-party creditors with unpaid wage claims, would be manifestly unfair. This is especially so where the wage claimants have already filed suit when the preferential transfer is accomplished.

We turn now to Gene's claim that he should not be made personally liable. The trial court imposed a judgment for $8,333.27 with interest at ten percent against the corporation and Gene jointly and severally. Gene contends that the proper remedy should not be the entry of a personal judgment against him, but rather the imposition of an equitable lien against the property that was transferred by the corporation.

Gene relies on the following general rules governing corporate liability. It is well-established that a corporation is an entity separate and distinct from its shareholders. *Northwestern Nat. Bank of Sioux City v. Metro Center, Inc.*, 303 N.W.2d 395, 398 (Iowa 1981). "The separate corporate personality ordinarily enables corporate stockholders to limit their personal liability to the extent of their investment." *Briggs Transportation Co., Inc. v. Starr Sales Co., Inc.*, 262 N.W.2d

805, 809 (Iowa 1978). However, the corporate device does not always insulate its owners from personal liability. Personal liability may be imposed in "exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetrate fraud or promote injustice." *Id.* Gene properly enumerates the factors listed in *Lakota Girl Scout C., Inc. v. Havey Fund-Rais. Man., Inc.,* 519 F.2d 634 (8th Cir.1975), that may be considered in determining if a corporation is merely the alter ego of its dominant shareholder. A corporation's existence can be disregarded if "1) the corporation is undercapitalized, 2) without separate books, 3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, 4) the corporation is used to promote fraud or illegality, 5) corporate formalities are not followed or 6) the corporation is merely a sham." *Id.* at 638.

■ Where Gene's argument fails is in his characterization of these factors as the only factors which warrant "piercing the corporate veil." Nowhere in *Lakota* is its listing claimed to be an exclusive or even an exhaustive one. Rather, no precise formula is available to predict when a court should disregard the corporate entity as Fletcher explains after a more extensive listing of factors than *Lakota's:*

> The conclusion to disregard the corporate entity may not, however, rest on a single factor but often involves a consideration of the mentioned factors; in addition, the particular situation must generally present an element of injustice or fundamental unfairness....
>
> It seems clear that no hard and fast rule as to the conditions under which the entity may be disregarded can be stated as they vary according to the circumstances of each case and that factors adopted as significant in a decision to disregard the corporate entity should be treated as guidelines and not as a conclusive test.

*Fletcher,* § 41.30 at 430–31. Additionally, at least two other noted treatises on corporate law state that one of the circumstances which may move a court to disregard corporate entity is where limited liability would be inequitable. 6 Hayes, *Iowa Practice Business Organizations* § 882 at 298 (1985); Hornstein, *Corporation Law and Practice* § 752 at 265 (1959). Hayes further specifies that "[t]he corporate veil may be disregarded when recognition would work inequitably against one or more groups of creditors of the enterprise...." *Hayes,* § 886 at 308.

■ In the case at bar, we do not know if the inventory transferred to Gene remains in his possession or if it has been entirely liquidated by him. Under these circumstances the remedy of an equitable lien may be ineffectual. Furthermore, Gene completely depleted the assets of the corporation and left it an empty shell for purposes of collection by the corporation's creditors. We conclude that recognizing the separate corporate existence and protecting Gene from personal liability in this case would bring about an inequitable result. This situation fulfills the "exceptional circumstances" requirement of *Briggs* and warrants imposing personal liability upon Gene.

**Liquidated Damages.** In their brief, plaintiffs assert that the district court erred by declining to award them liquidated damages, which was based on the ground that the corporation's failure to pay wages was not intentional. However, the plaintiffs did not file a notice of cross-appeal to raise this issue.

■ A party that neither appeals nor cross-appeals can have no greater relief or redress on appeal than was accorded it by the trial court. *Kalo Brick v. Chicago & Northwestern Transp.,* 295 N.W.2d 467, 468 (Iowa Ct.App.1979).

Accordingly, we cannot address this issue and hold that plaintiff are entitled only to the relief afforded by the trial court.

AFFIRMED.